JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALETTE OTT and LOIRA SANCHEZ, individually, and on behalf of all others similarly situated,<br><br>                 Plaintiffs,<br><br>           v.<br><br>COOPER INTERCONNECT, INC. a corporation; EATON CORPORATION, a corporation; and DOES 1 through 10, inclusive,<br><br>                 Defendants. | Case No. 2:23-cv-04501-SPG-JC<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [ECF NO. 15]** |

      Before the Court is Plaintiffs Dalette Ott's and Loira Sanchez's motion to remand this proposed class action to the Superior Court of California for the County of Ventura. (ECF No. 15). Defendant opposes. (ECF No. 21). Having considered the parties' submissions, the relevant law, the record in this case, and the parties' oral arguments, the Court **DENIES** Plaintiffs' Motion to Remand.

## I. BACKGROUND

Plaintiffs Dalette Ott and Loira Sanchez (together "Plaintiffs") allege that Defendants Cooper Interconnect, Inc. and Eaton Corporation (together "Defendants") have violated California's wage and hour laws. (ECF No. 1-1). On April 25, 2023, Plaintiffs filed a putative class action complaint in the Superior Court of California for the County of Ventura. (*Id.*). Plaintiffs assert eight causes of action, including a wide range of wage and hour violations under the California Labor Code, such as failure to pay overtime, failure to provide meal and rest breaks, and failure to provide accurate wage statements. (*Id.*). Plaintiffs also assert a cause of action for unfair business practices under California Business & Professions Code §§ 17200. (*Id.*). Finally, Plaintiffs seek an award of attorneys' fees pursuant to California Labor Code § 1194(a). (*Id.* at 24). On June 8, 2023, Defendants timely removed this action from LASC pursuant to 28 U.S.C. § 1332. (ECF No. 1 ("NOR")). On July 10, 2023, Plaintiffs timely filed the instant motion to remand. (ECF No. 15 ("Mot.")). Defendants opposed on August 2, 2023, (ECF No. 21 ("Opp.")), and Plaintiffs replied on August 9, 2023. (ECF No. 22 ("Reply")).

## II. LEGAL STANDARD

To remove a case from a state court to a federal court, a defendant must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). When removal is based on diversity of citizenship, the amount in controversy must exceed $75,000 and the parties must be diverse. 28 U.S.C. § 1332. In a class action brought outside the Class Action Fairness Act ("CAFA"), at least one named plaintiff in the class must satisfy the $75,000 amount in controversy requirement. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005); *see also Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010) ("Prior to CAFA, a class action could be heard in federal court under diversity jurisdiction only if there was complete diversity, i.e., all class representatives were diverse from all defendants, and if at least one named plaintiff satisfied the amount in controversy requirement of more than $75,000."); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001) (holding that "if a named

plaintiff in a diversity class action has a claim with an amount in controversy in excess of $75,000, 28 U.S.C. § 1367 confers supplemental jurisdiction over claims of unnamed class members irrespective of the amount in controversy in those claims").

The party invoking the removal statute bears the burden of establishing that federal subject-matter jurisdiction exists. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). Moreover, if it is "unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013) (internal citations and quotation marks omitted).

### III.   DISCUSSION

Plaintiffs argue that Defendant has failed to establish that the amount in controversy[1] exceeds $75,000 for two reasons. First, Plaintiffs challenge the accuracy and reasonableness of Defendants' calculation of damages for the alleged California Labor Code violations. Second, Plaintiffs challenge Defendants' calculation of attorneys' fees, arguing that it is improperly speculative and improperly includes future fees as to Plaintiffs' meal and rest break claims.

**A.   Defendants' Amount in Controversy for Plaintiffs' Wage and Hour Claims**

"A removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements." *Salter v. Quality*

---

[1] The parties agree that complete diversity exists between Plaintiff and Defendant. *See* (NOR at 3–4 (Plaintiffs are residents of California. Defendant Cooper is a corporation incorporated in Delaware with its principal place of business in Ohio. (*Id.* at 4). Defendant Eaton is a corporation that is both incorporated in and has its principal place of business in Ohio.)).

*Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (internal citation omitted). However, if a plaintiff then contests the allegations in the notice of removal, both sides may "submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 82 (2014). A plaintiff may contest the allegations in the notice of removal in two ways. First, a plaintiff may bring a "facial" attack" which "accepts the truth of the . . . allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Salter*, 974 F.3d at 964 (*quoting Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). When a plaintiff mounts a facial attack, the court resolves it in much the same way as a motion to dismiss—by accepting the allegations as true, drawing all reasonable inferences in the defendant's favor, and determining whether the allegations are sufficient to invoke the court's jurisdiction. *Id.* Alternatively, a plaintiff may bring a "factual attack," which "contests the truth of the . . . factual allegations, usually by introducing evidence outside the pleadings." *Id.* When a plaintiff brings a factual attack, the defendant must support its allegations with "competent proof" under a summary-judgment-like standard. *Id.*

The parties here appear to dispute whether Plaintiff has mounted a facial or factual attack. Plaintiff argues that Defendants must produce summary judgment type evidence in to support the allegations regarding the amount in controversy. Therefore, Plaintiff appears to argue that the Court should treat its Motion as a factual attack on Defendant's amount in controversy allegations. Defendant, on the other hand, argues that Plaintiff's own lack of evidence challenging the factual validity of the amounts in controversy dictates that Plaintiff has merely brought a facial challenge. The Court disagrees with Defendant.

A plaintiff may mount a factual attack without introducing evidence outside the pleadings where he or she "challenge[s] the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Harris v. KM Industrial, Inc.*, 980 F.3d 694, 700 (9th Cir. 2020). Here, while Plaintiffs do not provide evidence in support of their

challenges to Defendants' assumptions, Plaintiffs do challenge the reasonableness of the assumptions as to Defendants' damages calculation of meal and rest break violations. For instance, Plaintiffs argue that Defendants unreasonably assume a 100% violation rate when calculating meal and rest break violation damages. Defendants argue this is appropriate because Plaintiffs seek civil penalties. However, Plaintiffs' Complaint demonstrates that they seek compensation for missed meal and rest break violations. *See e.g.*, *Naranjo v. Spectrum Security Servs., Inc.*, 13 Cal. 5th 93, 117 (2022) (describing missed rest breaks compensation as wages). Therefore, Defendants' assumption of a 100% violation rate must be supported by the Complaint or other summary-judgment-type evidence.

      Defendants' have not provided evidence to support a 100% violation rate. The declarations provided in support of the Removal Notice and Defendants' opposition to the instant Motion both generally describe Plaintiffs' work schedules, but do not demonstrate why it is reasonable to assume that a meal or rest break violation occurred on every one of Plaintiffs' shifts. See (ECF Nos. 1-4, 21-1). Furthermore, the Complaint alleges that, "as a policy and practice," Defendants did not provide meal and rest periods. (Compl. ¶¶ 17-18). Courts have found this allegation alone insufficient to support an assumption of a 100% violation rate. *See e.g.*, *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 911 (N.D. Cal. 2016) (finding allegation of "policy and practice" of meal and rest break violations did not support an assumption of a 100% violation rate); *see also Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) (finding allegation of "pattern and practice" of meal and rest break violations did not support assumption that violations were "universally followed"). However, the Court need not decide whether the Complaint's "policy and practice" language supports a 100% violation rate here because Plaintiffs further allege that Defendants "regularly, *but not always*" required Plaintiffs to work a full workweek without proper breaks. (Compl. ¶ 17) (emphasis added).[2]

---

[2] Defendant argues that this Court should, like the Eastern District of California in *Muniz v. Pilot Travel Ctrs. LLC*, assume that a 100% violation rate is appropriate where a Plaintiff does not include allegations regarding "a violation rate that is discernibly smaller than

Defendants' assumption of a 100% violation therefore directly contradicts the language in the Complaint. In light of this contradiction, and because Defendants did not provide supplemental evidence to support their assumption of a 100% violation rate, the Court finds that the assumption is not a reasonable one. However, because Defendants argue in the alternative that the amount in controversy has been met, even if the Court assumes $0 in damages for meal and rest break violations, the Court will not grant the motion to remand on this basis.

### B.  Defendants' Amount in Controversy in Attorneys' Fees

Plaintiffs challenge Defendants' calculation of attorneys' fees for multiple reasons. First, Plaintiffs argue that Defendants improperly include future attorneys' fees for meal and rest break violations. Second, Plaintiffs argue that Defendants' assumption of 300 hours spent at an hourly rate of $525 per hour vastly and improperly inflates the amount in controversy. Instead, according to Plaintiffs, the Court should assume 100 hours will be spent litigating this matter through trial and the Court should apply an hourly rate of $300 per hour. The Court examines the latter argument first.

"[W]here an underlying statute authorizes an award of attorney's fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). To determine the amount of attorneys' fees that should be included in the amount in controversy, courts consider a "reasonable estimate of [authorized] attorneys' fees likely to be expended." *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 WL 1526441, at *3 (N.D. Cal. Apr. 15, 2010). This estimate includes "future attorneys' fees recoverable by statute or contract." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018). However, estimates of attorneys' fees for the purposes of

---

100%." *Muniz v. Pilot Travel Ctrs., LLC*, No. CIV. S-07-0325 FCD EFB, 2007 U.S. Dist. LEXIS 31515, at *13–14 (E.D. Cal. Apr. 30, 2007). However, the Court declines to adopt this interpretation, which is not binding on the Court, finding that it is not supported by the plain language of the Complaint here.

assessing the amount in controversy should be conservative. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007).

Defendants' efforts to explain their attorneys' fees while a close call, are ultimately successful. First, in an effort to support their estimate of $525 per hour, Defendants point to two other wage and hour cases involving Plaintiffs' counsel. Defendants argue that, because Plaintiffs' counsel has previously sought to recover fees in wage and hour actions with average rates of $525 and $650 per hour, the Court may reasonably assume $525 per hour when calculating the amount in controversy here. Plaintiffs respond by arguing that the specific attorneys staffed on those cases were more senior and thus charged higher fees. At oral argument, Plaintiffs' counsel also argued that, based on her experience, the case is likely to settle. Therefore, including fees for senior attorneys based on their likely involvement in trial and trial preparation would be an inaccurate representation of the amount in controversy. However, Plaintiffs' counsel provides no evidence, for instance in the form of a declaration, to support this proposition. Nor does Plaintiff provide evidence to demonstrate why $300 an hour would be a more appropriate assumption here. Thus, given the evidence provided by Defendants of fees sought by this same Plaintiffs' counsel in wage and hour actions, the Court finds the $525 reasonable for the purposes of calculating the amount in controversy.

Defendants' estimate of hours spent on the instant action to litigate it through trial proves more problematic. In the Removal Notice, Defendants estimate that Plaintiffs' counsel will spend a minimum of 300 hours litigating this action. While it is true that "employment claims have been found to require substantial effort from counsel," 300 hours is generally the upper end of the estimates employed by courts in this district. *See Sasso v. Noble Utah Long Beach, LLC*, No. CV 14-09154-AB (AJWx), 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) (internal citation omitted). Indeed, courts in this circuit have often found 100 hours to be a reasonable estimate in wage and hour cases. *See id.*; *see also Garcia v. Commonwealth Financial Network*, No. 20-cv-1483-BAS-LL, 2020 WL 6886267, at *8 (S.D. Cal. Nov. 24, 2020) (finding 100 hours of attorneys' time in a wage

and hour case was an appropriately conservative estimate of time spent to litigate the case through trial); *Adkins v. J.B. Hunt Transp., Inc.*, 293 F. Supp. 3d 1140, 1148 (E.D. Cal. 2018) (finding the same). While Defendant points to cases in which courts have found 300 hours of attorney time reasonable, Defendant does not explain why the facts in each of those cases were similar to those presented in the instant action. *See Fritsch*, 899 F.3d at 796 (stating that "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place"). For instance, as Plaintiffs point out, certain claims alleged in their Complaint may "not allow recovery of attorneys' fees for legal work." *Id.* (citing *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1259 (2012) (stating that the attorneys' fees shifting provisions do not apply to legal work relating to meal and rest period claims)). Therefore, Defendants' estimate of 300 hours appears to be, in part, an estimate of convenience – if the Court applies the 100 hour estimate that appears more common in this type of case, Defendants will fail to meet the minimum $75,000 threshold for one of the named Plaintiffs.[3] However, this is not fatal to Defendant's attempt to establish this Court's jurisdiction.

Even applying the appropriately conservative estimate of 100 hours to Plaintiff Sanchez's claims, Defendants calculations lead to a total amount in controversy of $75,875.99. *See* (ECF No. 21 at 18). Thus, because Defendants have demonstrated that the amount in controversy is met as to at least one of the named Plaintiffs, they have met

---

[3] In opposition to the instant Motion, Defendants argue that this Court has previously allowed an estimate of $60,000 in attorneys' fees in a single plaintiff wage and hour case. The Defendants in *Swans v. Fieldworks* estimated that 100 hours of work would be spent prosecuting the wage and hour case and argued that an hourly rate of $600 was appropriate. The Plaintiff in that case did not dispute that $600 was an appropriate hourly rate. Instead, the dispute centered around whether 100 hours was too large an estimate given the likelihood of settlement. The Court found the $60,000 estimate was appropriate because the 100-hour estimate was appropriately conservative. Thus, this Court's ruling in *Swans* does not dictate or otherwise indicate that a 300-hour estimate would be appropriate in the instant case. Likewise, it does not allow Defendants to simply assume, without explaining why, a $60,000 estimate would be appropriate here.

their burden to demonstrate this Court's diversity jurisdiction and the Court **DENIES** Plaintiffs' Motion. *See Lewis*, 627 F.3d at 398 (finding diversity jurisdiction in a putative class action outside the context of CAFA if at least one named plaintiff satisfies the amount in controversy requirement of more than $75,000, and complete diversity exists).

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand.

**IT IS SO ORDERED.**

DATED: August 25, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE