# EXHIBIT 1

# AMENDED CLASS ACTION AND PAGA SETTLEMENT AGREEMENT

This Amended Class Action and PAGA Settlement Agreement ("Agreement") is made by and between Plaintiffs and Defendants. Upon being signed by all Parties, this amended Agreement is intended to replace the Class Action and PAGA Settlement Agreement signed by the Parties in October of 2024, to address issues raised by the Court during the approval process.

## 1.    DEFINITIONS.

In addition to the other terms defined in this Agreement, the terms below have the following meaning in this Agreement:

1.1.    "Action" means: (1) Plaintiffs' putative class action lawsuit alleging wage and hour violations captioned, *Dalette Ott and Loira Sanchez v. Eaton Corporation and Cooper Interconnect, Inc.*, Ventura County Superior Court Case No. 2023CUOE008132, which was initiated on April 25, 2023, and subsequently removed to the United District Court for the Central District of California, Case No. 2:23-cv-04501 ("Plaintiffs' Class Action"); and (2) Plaintiff Sanchez's representative lawsuit seeking civil penalties captioned, *Loira Sanchez v. Eaton Corporation and Cooper Interconnect, Inc.,* Ventura County Superior Court, Case No. 2023CUOE014122, initiated on September 15, 2023 ("PAGA Action").

1.2.    "Administrator" means CPT Group, Inc., the neutral entity the Parties have agreed to appoint to administer the Settlement.

1.3.    "Administration Expenses Payment" means the amount the Administrator will be paid from the Gross Settlement Amount as reimbursement for its reasonable fees and expenses in accordance with the Administrator's "not to exceed" bid submitted to the Court in connection with preliminary approval of the Settlement.

1.4.    "Aggrieved Employees" means all individuals who were employed by Defendants in the State of California and classified as non-exempt employees during the PAGA Period.

1.5.    "Class" means all individuals who were employed by Defendants in the State of California and classified as non-exempt employees during the Class Period.

1.6.    "Class Counsel" means Tyler Woods and Peter Horton of Wilshire Law Firm.

1.7.    "Class Counsel Fees Payment" means the amount allocated to Class Counsel for reimbursement of reasonable attorneys' fees incurred to prosecute the Action.

1.8.    "Class Counsel Litigation Expenses Payment" means the amount allocated to Class Counsel for reimbursement of its litigation expenses incurred to prosecute the Action.

1.9.    "Class Data" means Class Member identifying information in Defendants' possession including the Class Member's name, last-known mailing address, Social Security

number, and dates of employment and/or number of Class Period Workweeks and PAGA Pay Periods.

1.10.    "Class Member" means a member of the Class, as either a Participating Class Member or Non-Participating Class Member (including a Non-Participating Class Member who qualifies as an Aggrieved Employee).

1.11.    "Class Member Address Search" means the Administrator's investigation and search for current Class Member mailing addresses using all reasonably available sources, methods and means including, but not limited to, the National Change of Address database, skip traces, and direct contact by the Administrator with Class Members

1.12.    "Class Notice" means the Court approved "Notice of Class Action Settlement and Hearing Date for Final Court Approval," to be mailed to Class Members in English with a Spanish translation in the form, without material variation, attached as Exhibit A and incorporated by reference into this Agreement.

1.13.    "Class Period" means the period from April 25, 2019, to October 14, 2024, or the date of preliminary approval, whichever is earlier.

1.14.    "Class Period Workweeks" means any week during which a Class Member worked for Defendants for at least one day during the Class Period.

1.15.    "Class Representative Service Payment" means the payment to Plaintiffs for initiating the Action and providing services in support of the Action.

1.16.    "Court" means the United States District Court for the Central District of California.

1.17.    "Defendants" means Eaton Corporation and any of its affiliates, including Power Distribution Inc.; Joslyn Sunbank Company, LLC; Sure Power Inc.; Cooper Interconnect, Inc.; Eaton Aerospace LLC; and Cooper Bussman, LLC.

1.18.    "Defense Counsel" means Jackson Lewis, P.C.

1.19.    "Effective Date" means the date by when both of the following have occurred: (a) the Court enters a Judgment on the Final Approval Order; and (b) the Judgment is final. The Judgment is final as of the latest of the following occurrences: (a) if no Participating Class Member objects to the Settlement, the day the Court enters Judgment; (b) if one or more Participating Class Members objects to the Settlement, the day after the deadline for filing a notice of appeal from the Judgment; or if a timely appeal from the Judgment is filed, the day after the appellate court affirms the Judgment and issues a remittitur.

1.20.    "Final Approval Order" means the Court's order granting final approval of the Settlement.

1.21.   "Final Approval Hearing" means the Court's hearing on the motion for final approval of the Settlement.

1.22.   "Gross Settlement Amount" means $3,500,000, which is the total amount Defendants agree to pay under the Settlement except as provided in Paragraph 4.1 below. The Gross Settlement Amount will be used to pay Individual Class Payments, Individual PAGA Payments, the LWDA PAGA Payment, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, Class Representative Service Payments, and the Administration Expenses Payment.

1.23.   "Individual Class Payment" means the Participating Class Member's pro rata share of the Net Settlement Amount calculated according to the number of Class Period Workweeks worked during the Class Period.

1.24.   "Individual PAGA Payment" means the Aggrieved Employee's pro rata share of 25% of the PAGA Penalties calculated according to the number of PAGA Pay Periods worked during the PAGA Period.

1.25.   "Judgment" means the judgment entered by the Court based upon the Final Approval Order.

1.26.   "LWDA" means the California Labor and Workforce Development Agency, the agency entitled, under Labor Code section 2699(i).

1.27.   "LWDA PAGA Payment" means the 75% of the PAGA Penalties paid to the LWDA under Labor Code section 2699(i).

1.28.   "Net Settlement Amount" means the Gross Settlement Amount, less the following payments in the amounts approved by the Court: Individual PAGA Payments, the LWDA PAGA Payment, Class Representative Service Payments, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, and the Administration Expenses Payment. The remainder is to be paid to Participating Class Members as Individual Class Payments.

1.29.   "Non-Participating Class Member" means any Class Member who opts out of the Settlement by sending the Administrator a valid and timely Request for Exclusion.

1.30.   "Operative Complaint" means the First Amended Complaint to be filed by Plaintiffs as discussed in Paragraphs 2.7 and 2.8.

1.31.   "PAGA Pay Period" means any Pay Period during which an Aggrieved Employee worked for Defendants for at least one day during the PAGA Period.

1.32.   "PAGA Period" means the period from May 12, 2022, to October 14, 2024, or the date of preliminary approval, whichever is earlier.

1.33.   "PAGA" means the Private Attorneys General Act, Labor Code sections 2698, *et seq.*

1.34.   "PAGA Notice" means Plaintiff's May 18, 2023, letter to the LWDA providing notice pursuant to Labor Code section 2699.3(a), and any amendments thereto under this Agreement.

1.35.   "PAGA Penalties" means the total amount of $175,000.00 in PAGA civil penalties to be paid from the Gross Settlement Amount, allocated 25% to the Aggrieved Employees ($43,750.00) and the 75% to LWDA ($131,250.00) in settlement of PAGA

1.36.   "Participating Class Member" means a Class Member who does not submit a valid and timely Request for Exclusion from the Settlement.

1.37.   "Parties" means Plaintiffs and Defendants collectively or individually as "Party."

1.38.   "Plaintiff" means Dalette Ott and Loira Sanchez, the named plaintiffs in the Action.

1.39.   "Preliminary Approval Order" means the Court's order granting preliminary approval of the Settlement.

1.40.   "Released Class Claims" means the claims being released as described in Paragraph 5.2 below.

1.41.   "Released PAGA Claims" means the claims being released as described in Paragraph 5.3 below.

1.42.   "Released Parties" means: (i) Defendants; (ii) any parent, subsidiary, or affiliate of Defendants; (iii) any past or present officer, director or employee of the entities described in (i)-(ii), in their individual and official capacities; and (iv) any past or present predecessors, parents, subsidiaries, affiliates, owners, shareholders, members, managers, benefit plans, operating units, divisions, agents, representatives, officers, directors, partners, employees, fiduciaries, insurers, attorneys, successors or assigns of the entities described in (i)–(iii).

1.43.   "Request for Exclusion" means a Class Member's submission of a written request to be excluded from the Settlement signed by the Class Member.

1.44.   "Response Deadline" means 45 days after the Administrator mails the Class Notice to Class Members and Aggrieved Employees and will be the last date on which Class Members may: (a) fax, email, or mail Requests for Exclusion from the Settlement, or (b) fax, email, or mail his or her Objection to the Settlement. Class Members to whom Class Notices are resent after having been returned undeliverable to the Administrator will have an additional 14 calendar days beyond the Response Deadline has expired.

1.45.   "Settlement" means the disposition of the Action effected by this Agreement and the Judgment.

2.    **RECITALS.**

2.1.    On April 25, 2023, Plaintiffs commenced this Action by filing a Complaint alleging causes of action for: (1) failure to pay minimum and straight time wages (Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197); (2) failure to pay overtime wages (Cal. Lab. Code §§ 1194 and 1198); (3) failure to provide meal periods (Cal. Lab. Code §§ 226.7, 512); (4) failure to authorize and permit rest periods (Cal. Lab. Code §§ 226.7); (5) failure to timely pay final wages at termination (Cal. Lab. Code §§ 201-203); (6) failure to provide accurate itemized wage statements (Cal. Lab. Code § 226); (7) failure to indemnify employees for expenditures (Cal. Lab. Code § 2802); and (8) Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200, *et seq.*).

2.2.    On September 15, 2023, Plaintiff Loira Sanchez filed a separate Complaint alleging a cause of action for civil penalties under PAGA (Cal. Lab. Code § 2699, *et seq.*).

2.3.    Pursuant to Labor Code section 2699.3(a), Plaintiff Loira Sanchez gave timely written notice to the LWDA by sending the PAGA Notice.

2.4.    The Parties participated in an all-day mediation with Monique Ngo-Bonnici, which led to this Agreement to settle the Action.

2.5.    Prior to mediation, Plaintiffs obtained, through informal discovery information regarding Class Members and Aggrieved Employees (*e.g.*, the number of Class Members, Class Period Workweeks, PAGA Pay Periods, *etc.*), payroll and time records for Plaintiffs and a sampling of Class Members, and Defendants' policies and procedures that applied to Class Members during the Class Period. Plaintiffs' investigation was sufficient to satisfy the criteria for court approval set forth in *Dunk v. Foot Locker Retail, Inc.* (1996) 48 Cal.App.4th 1794, 1801 and *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129-130 ("*Dunk/Kullar*").

2.6.    The Court has not granted class certification.

2.7.    In connection with this Agreement and for purposes of Settlement only, the Parties agreed to stipulate to the filing of a First Amended Complaint that complies with the Parties agreement at mediation. Among other things, the First Amended Complaint will consolidate the claims alleged in the PAGA action, name the appropriate Defendants, add Plaintiffs' unpled claims, *etc.* The First Amended Complaint is the Operative Complaint in the Action. Plaintiffs will also submit an amended PAGA Notice to the LWDA to include the claims and Defendants in the Operative Complaint. Defendants deny the allegations in the Operative Complaint, deny any failure to comply with the laws identified in the Operative Complaint, and deny any and all liability for the causes of action alleged.

2.8.    Within five days of filing the Operative Complaint, Plaintiff Loira Sanchez will file a request for dismissal and/or take any action necessary to dismiss the PAGA Action, without prejudice.

## 3.    MONETARY TERMS.

3.1.    <u>Gross Settlement Amount</u>. Except as otherwise provided by Paragraph 4.1 below, Defendants agree to pay $3,500,000 and no more as the Gross Settlement Amount and to separately pay any and all employer payroll taxes owed on the Wage Portions of the Individual Class Payments. Defendants have no obligation to pay the Gross Settlement Amount (or any payroll taxes) prior to the deadline stated in Paragraph 4.3 of this Agreement. The Administrator will disburse the entire Gross Settlement Amount without asking or requiring Participating Class Members or Aggrieved Employees to submit any claim as a condition of payment. None of the Gross Settlement Amount will revert to Defendants.

3.2.    <u>Payments from the Gross Settlement Amount</u>. The Administrator will make and deduct the following payments from the Gross Settlement Amount, in the amounts specified by the Court in the Final Approval.

3.2.1.    <u>To Plaintiffs</u>. Class Representative Service Payments to Plaintiffs of not more than $10,000 each (in addition to any Individual Class Payment and any Individual PAGA Payment the Class Representatives are entitled to receive as Participating Class Members and Aggrieved Employees, if applicable). Defendants have negotiated for the terms of this Agreement, so Defendants will not oppose Plaintiffs' request for Class Representative Service Payments that do not exceed this amount. As part of the motion for Class Counsel Fees Payment and Class Litigation Expenses Payment, Plaintiffs will seek Court approval for any Class Representative Service Payments no later than 28 days prior to the Final Approval Hearing. If the Court approves Class Representative Service Payments less than the amounts requested, the Administrator will retain the remainder in the Net Settlement Amount. The Administrator will pay the Class Representative Service Payments using IRS Form 1099. Plaintiffs assume full responsibility and liability for employee taxes owed on the Class Representative Service Payments.

3.2.2.    <u>To Class Counsel</u>. A Class Counsel Fees Payment of not more than one-third of the Gross Settlement Amount, which is currently estimated to be $1,166,666.67 and a Class Counsel Litigation Expense Payment of not more than $50,000. Defendants have negotiated for the terms of this Agreement, so Defendants will not oppose requests for the Class Counsel Fees Payment and Class Counsel Litigation Expense Payment provided that they do not exceed these amounts. Plaintiffs and/or Class Counsel will file a motion for Class Counsel Fees Payment and Class Litigation Expenses Payment no later than 28 days prior to the Final Approval Hearing. If the Court approves a Class Counsel Fees Payment and/or a Class Counsel Litigation Expenses Payment less than the amounts requested, the Administrator will allocate the remainder to the Net Settlement Amount. Released Parties will have no liability to Class Counsel or any other plaintiff's Counsel arising from any claim to any portion

any Class Counsel Fee Payment and/or Class Counsel Litigation Expenses Payment. The Administrator will pay the Class Counsel Fees Payment and Class Counsel Litigation Expenses Payment using one or more IRS 1099 Forms. Class Counsel assumes full responsibility and liability for taxes owed on the Class Counsel Fees Payment and the Class Counsel Litigation Expenses Payment and holds Defendants harmless, and indemnifies Defendants, from any dispute or controversy regarding any division or sharing of the Class Counsel Fees Payment and/or Class Counsel Litigation Expenses Payment.

3.2.3.  <u>To the Administrator</u>. An Administrator Expenses Payment not to exceed $25,000 except for a showing of good cause and as approved by the Court. To the extent the Administration Expenses Payment is less or the Court approves payment less than $25,000, the Administrator will retain the remainder in the Net Settlement Amount.

3.2.4.  <u>To Each Participating Class Member</u>. An Individual Class Payment calculated by: (a) dividing the Net Settlement Amount by the total number of Class Period Workweeks worked by all Participating Class Members during the Class Period; and (b) multiplying the result by each Participating Class Member's Class Period Workweeks.

    3.2.4.1. <u>Tax Allocation of Individual Class Payments</u>. 20% of each Participating Class Member's Individual Class Payment will be allocated to settlement of wage claims (the "Wage Portion"). The Wage Portions are subject to tax withholding and will be reported on an IRS W-2 Form. The remaining 80% of each Participating Class Member's Individual Class Payment will be allocated to settlement of claims for interest and penalties (the "Non-Wage Portion"). The Non-Wage Portions are not subject to wage withholdings and will be reported on IRS 1099 Forms. Participating Class Members assume full responsibility and liability for any employee taxes owed on their Individual Class Payment.

    3.2.4.2. <u>Effect of Non-Participating Class Members on Calculation of Individual Class Payments</u>. Non-Participating Class Members will not receive any Individual Class Payments. The Administrator will retain amounts equal to their Individual Class Payments in the Net Settlement Amount for distribution to Participating Class Members on a pro rata basis.

3.2.5.  <u>To the LWDA and Aggrieved Employees</u>. PAGA Penalties in the amount of $175,000.00 to be paid from the Gross Settlement Amount, with 75% ($131,250.00) allocated to the LWDA PAGA Payment and 25% ($43,750.00) allocated to the Individual PAGA Payments.

3.2.5.1. The Administrator will calculate each Individual PAGA Payment by: (a) dividing the amount of the Aggrieved Employees' 25% share of PAGA Penalties ($25,000) by the total number of PAGA Pay Periods worked by all Aggrieved Employees during the PAGA Period; and (b) multiplying the result by each Aggrieved Employee's PAGA Pay Periods. Aggrieved Employees assume full responsibility and liability for any taxes owed on their Individual PAGA Payment.

3.2.5.2. If the Court approves PAGA Penalties of less than the amount requested, the Administrator will allocate the remainder to the Net Settlement Amount. The Administrator will report the Individual PAGA Payments on IRS 1099 Forms.

## 4.  SETTLEMENT FUNDING AND PAYMENTS

4.1.  <u>Class Period Workweeks and Escalator Clause</u>. Based on a review of their records to date, Defendants estimate that there are approximately 1,815 Class Members and 230,896 Class Period Workweeks, with the Class Members all typically working similar positions, being scheduled to work the same number of hours each Workweek, 40 hours per Workweek (essentially no part-time employees), and at similar rates of pay to one another, averaging $25.57 per hour. In the event the number of Class Period Workweeks exceeds 230,896 by more than 10% (*i.e., exceeds* 253,985), Defendants at their sole discretion, will either: (1) pay the pro rata percentage increase in excess of 10% to the Gross Settlement Amount to include the additional workweeks (*e.g.,* an 11% increase in workweeks would result in a 1% increase in the Gross Settlement Amount); or (2) reduce the Class Period to the date that 253,985 Class Period Workweeks are met, but not exceeded.

4.2.  <u>Class Data</u>. Not later than 20 days after the Court grants Preliminary Approval of the Settlement, Defendants will simultaneously deliver the Class Data to the Administrator, in the form of a Microsoft Excel spreadsheet. To protect Class Members' privacy rights, the Administrator must maintain the Class Data in confidence, use the Class Data only for purposes of this Settlement and for no other purpose, and restrict access to the Class Data to Administrator employees who need access to the Class Data to effect and perform under this Agreement. Defendants have a continuing duty to immediately notify Class Counsel if it discovers that the Class Data omitted class member identifying information and to provide corrected or updated Class Data as soon as reasonably feasible. The Parties and their counsel will expeditiously use best efforts, in good faith, to reconstruct or otherwise resolve any issues related to missing or omitted Class Data.

4.3.  <u>Funding of Gross Settlement Amount</u>. Defendants will fully fund the Gross Settlement Amount, and also fund the amounts necessary to fully pay Defendants' share of payroll taxes by transmitting the funds to the Administrator no later than 30 days after the Effective Date.

4.4.  <u>Payments from the Gross Settlement Amount</u>. Within 14 days after Defendants fund the Gross Settlement Amount, the Administrator will mail checks for all Individual Class Payments,

all Individual PAGA Payments, the LWDA PAGA Payment, the Administration Expenses Payment, the Class Counsel Fees Payment, the Class Counsel Litigation Expenses Payment, and the Class Representative Service Payments. Disbursement of the Class Counsel Fees Payment, the Class Counsel Litigation Expenses Payment and the Class Representative Service Payments will not precede disbursement of Individual Class Payments and Individual PAGA Payments.

4.4.1.  The Administrator will issue checks for the Individual Class Payments and/or Individual PAGA Payments and send them to the Class Members via First Class U.S. Mail, postage prepaid. The face of each check will prominently state the date (not less than 180 days after the date of mailing) when the check will be voided. The Administrator will cancel all checks not cashed by the void date. The Administrator will send checks for Individual Settlement Payments to all Participating Class Members (including those for whom Class Notice was returned undelivered). The Administrator will send checks for Individual PAGA Payments to all Aggrieved Employees including Non-Participating Class Members who qualify as Aggrieved Employees (including those for whom Class Notice was returned undelivered). The Administrator may send Participating Class Members a single check combining the Individual Class Payment and the Individual PAGA Payment. Before mailing any checks, the Settlement Administrator must update the recipients' mailing addresses using the National Change of Address Database.

4.4.2.  The Administrator must conduct a Class Member Address Search for all other Class Members whose checks are returned undelivered without USPS forwarding address. Within seven days of receiving a returned check the Administrator must re-mail checks to the USPS forwarding address provided or to an address ascertained through the Class Member Address Search. The Administrator need not take further steps to deliver checks to Class Members whose re-mailed checks are returned as undelivered. The Administrator will promptly send a replacement check to any Class Member whose original check was lost or misplaced, requested by the Class Member prior to the void date.

4.4.3.  For any Class Member whose Individual Class Payment check and/or Individual PAGA Payment check is uncashed and cancelled after the void date, the Administrator will transmit the funds represented by such checks to the California Controller's Unclaimed Property Fund in the name of the Class Member thereby leaving no "unpaid residue" subject to the requirements of California Code of Civil Procedure section 384(b).

4.4.4.  The payment of Individual Class Payments and/or Individual PAGA Payments will not obligate Defendants to confer any additional benefits or make any additional payments to Class Members and/or Aggrieved Employees (*e.g.,* 401(k) contributions, bonuses, *etc.*) beyond those specified in this Agreement.

## 5. RELEASE OF CLAIMS.

Effective on the date when Defendants fully funds the entire Gross Settlement Amount and funds all employer payroll taxes owed on the Wage Portion of the Individual Class Payments; Plaintiffs, Class Members, Aggrieved Employees, and Class Counsel will release claims against all Released Parties as follows:

5.1. <u>Plaintiffs' Releases</u>. Plaintiffs and their respective former and present spouses, representatives, agents, attorneys, heirs, administrators, successors, and assigns generally, release and discharge Released Parties from all claims, transactions, or occurrences that occurred during the Class Period, including, but not limited to: (a) all claims related to their employment with Defendant and/or the Released Parties; (b) all claims that were, or reasonably could have been, alleged, based on the facts contained, in the Operative Complaint and/or PAGA Notice, and ascertained during the Action; and (c) all PAGA claims that were, or reasonably could have been alleged based on facts contained in the Operative Complaint and/or PAGA Notice, and ascertained during the Action and released under 6.2, below ("Plaintiffs' Release"). Plaintiffs' Release does not extend to any claims or actions to enforce this Agreement, or to any claims for vested benefits, unemployment benefits, disability benefits, social security benefits, workers' compensation benefits that arose at any time. Plaintiffs acknowledge that Plaintiffs may discover facts or law different from, or in addition to, the facts or law that Plaintiff now knows or believes to be true but agrees, nonetheless, that Plaintiffs' Release will be and remain effective in all respects, notwithstanding such different or additional facts or Plaintiffs' discovery of them.

5.1.1. <u>Plaintiffs' Waiver of Rights Under California Civil Code section 1542</u>. For purposes of Plaintiffs' Releases, Plaintiffs expressly waive and relinquish the provisions, rights, and benefits, if any, of section 1542 of the California Civil Code, which reads:

*A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that if known by him or her would have materially affected his or her settlement with the debtor or Released Party.*

5.2. <u>Release by Participating Class Members</u>. All Participating Class Members, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, release Released Parties from all claims that were alleged, or reasonably could have been alleged, based on the facts and claims alleged in the Operative Complaint and/or PAGA Notice, and ascertained in the course of the Action, including the following claims for relief: (i) failure to pay minimum and straight wages; (ii) failure to pay overtime wages; (iii) failure to provide meal periods; (iv) failure to authorize and permit rest periods; (v) failure to timely pay final wages during employment and at termination; (vi) failure to provide accurate itemized wage

statements; (vii) failure to indemnify employees for expenditures; (viii) unfair business practices; (ix) unlawful time rounding; (x) failure to pay overtime, break premiums, and sick pay at the regular rate of pay; (xi) alleged violation of Labor Code sections 201, 202, 203, 204, 204b, 210, 216, 218, 218.5, 218.6, 223, 226, 226.3, 226.7, 432, 510, 512, 551, 552, 558, 1174, 1174.5, 1771, 1774, 1776, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, 2800, 2802, 2804, and any applicable Industrial Welfare Commission Wage Orders; (xii) an alleged violation of Business & Professions Code section 17200, *et seq.*; and (xiii) all claims for damages, penalties, interest, attorneys' fees, costs, injunctive relief, restitution, and any other equitable relief in California statute, ordinance, regulation, common law, or other source of law. Except as set forth in Paragraph 5.3 of this Agreement, Participating Class Members do not release any other claims, including claims for vested benefits, wrongful termination, violation of the Fair Employment and Housing Act, unemployment insurance, disability, social security, workers' compensation, or claims based on facts occurring outside the Class Period.

5.3.    Release by Aggrieved Employees, Including Participating Class Members Who Are Aggrieved Employees and Non-Participating Class Members Who Are Aggrieved Employees.  All Aggrieved Employees, including Participating Class Members who are Aggrieved Employees and Non-Participating Class Members who are Aggrieved Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, the Released Parties from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the facts and claims alleged in the Operative Complaint and/or PAGA Notice, and ascertained in the course of the Action, including claims for: (i) failure to pay minimum and straight wages; (ii) failure to pay overtime wages; (iii) failure to provide meal periods; (iv) failure to authorize and permit rest periods; (v) failure to timely pay final wages during employment and at termination; (vi) failure to provide accurate itemized wage statements; (vii) failure to indemnify employees for expenditures; (viii) unfair business practices; (ix) unlawful time rounding; (x) failure to pay overtime, break premiums, and sick pay at the regular rate of pay; (xi) alleged violation of Labor Code sections 201, 202, 203, 204, 204b, 210, 216, 218, 218.5, 218.6, 223, 226, 226.3, 226.7, 432, 510, 512, 551, 552, 558, 1174, 1174.5, 1771, 1774, 1776, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, 2800, 2802, 2804, and any applicable Industrial Welfare Commission Wage Orders.

## 6.    MOTION FOR PRELIMINARY APPROVAL.

The Parties agree to jointly prepare and timely file a motion seeking Preliminary Approval of the Settlement ("Motion for Preliminary Approval") that complies with the Court's current checklist for Preliminary Approvals.

6.1.    Plaintiffs' Responsibilities. Plaintiffs will prepare and deliver to Defense Counsel all documents necessary for obtaining Preliminary Approval, including: (i) a draft of the notice, and memorandum in support, of the Motion for Preliminary Approval that includes an analysis of the Settlement under *Dunk/Kullar* and a request for approval of the PAGA Settlement under Labor Code Section 2699(f)(2); (ii) a draft proposed Preliminary Approval Order; (iii) a draft proposed Class Notice; (iv) a signed declaration from the Administrator attaching its "not to exceed" bid for administering the Settlement and attesting to its willingness to serve, competency, operative procedures for protecting the security of Class Data, amounts of insurance coverage for any data breach, defalcation of funds or

other misfeasance, all facts relevant to any actual or potential conflicts of interest with Class Members, and the nature and extent of any financial relationship with Plaintiffs, Class Counsel or Defense Counsel; (v) a signed declaration from Plaintiffs confirming willingness and competency to serve and disclosing all facts relevant to any actual or potential conflicts of interest with Class Members and the Administrator; (v) a signed declaration from Class Counsel attesting to their competency to represent the Class Members, their timely transmission to the LWDA of all necessary PAGA documents (initial notice of violations (Labor Code section 2699.3(a), Operative Complaint (Labor Code section 2699(l)(1), this Agreement (Labor Code section 2699(l)(2); and (vi) all facts relevant to any actual or potential conflict of interest with Class Members, the Administrator and/or the Cy Pres Recipient.

6.2.    <u>Responsibilities of Counsel</u>. Class Counsel and Defense Counsel are jointly responsible for expeditiously finalizing and filing the Motion for Preliminary Approval no later than 30 days after the full execution of this Agreement; obtaining a prompt hearing date for the Motion for Preliminary Approval; and for appearing in Court to advocate in favor of the Motion for Preliminary Approval. Class Counsel is responsible for delivering the Court's Preliminary Approval Order to the Administrator.

6.3.    <u>Duty to Cooperate</u>. If the Parties disagree on any aspect of the proposed Motion for Preliminary Approval and/or the supporting declarations and documents, Class Counsel and Defense Counsel will expeditiously work together on behalf of the Parties by meeting in person or by telephone, and in good faith, to resolve the disagreement. If the Court does not grant preliminary approval or conditions preliminary approval on any material change to this Agreement, Class Counsel and Defense Counsel will expeditiously work together on behalf of the Parties by meeting in person or by telephone, and in good faith, to modify the Agreement and otherwise satisfy the Court's concerns.

## 7.    SETTLEMENT ADMINISTRATION.

7.1.    <u>Selection of Administrator</u>. The Parties have jointly selected CPT Group, Inc. to serve as the Administrator and verified that, as a condition of appointment, CPT Group, Inc. agrees to be bound by this Agreement and to perform, as a fiduciary, all duties specified in this Agreement in exchange for the Administration Expenses Payment. The Parties, Class Counsel, and Defense Counsel represent that they have no interest or relationship, financial or otherwise, with the Administrator other than a professional relationship arising out of prior experiences administering settlements.

7.2.    <u>Employer Identification Number</u>. The Administrator will have and use its own Employer Identification Number for purposes of calculating payroll tax withholdings and providing reports state and federal tax authorities.

7.3.    <u>Qualified Settlement Fund</u>. The Administrator will establish a settlement fund that meets the requirements of a Qualified Settlement Fund ("QSF") under US Treasury Regulation section 468B-1.

7.4.    <u>Notice to Class Members</u>.

7.4.1.  No later than three business days after receipt of the Class Data, the Administrator will notify Class Counsel that the list has been received and state the number of Class Members, Aggrieved Employees, Class Period Workweeks, and PAGA Pay Periods in the Class Data.

7.4.2.  Using best efforts to perform as soon as possible, and in no event later than 14 days after receiving the Class Data, the Administrator will send to all Class Members identified in the Class Data, via first-class United States Postal Service ("USPS") mail, the Class Notice with Spanish translation, substantially in the form attached to this Agreement as Exhibit A. The first page of the Class Notice will prominently estimate the dollar amounts of any Individual Class Payment and/or Individual PAGA Payment payable to the Class Member, and the number of Class Period Workweeks and PAGA Pay Periods (if applicable) used to calculate these amounts. Before mailing Class Notices, the Administrator will update Class Member addresses using the National Change of Address database.

7.4.3.  Not later than three business days after the Administrator's receipt of any Class Notice returned by the USPS as undelivered, the Administrator will re-mail the Class Notice using any forwarding address provided by the USPS. If the USPS does not provide a forwarding address, the Administrator will conduct a Class Member Address Search, and re-mail the Class Notice to the most current address obtained. The Administrator has no obligation to make further attempts to locate or send Class Notice to Class Members whose Class Notice is returned by the USPS a second time.

7.4.4.  The deadlines for Class Members' written objections, challenges to Class Period Workweeks and/or PAGA Pay Periods, and Requests for Exclusion will be extended an additional 14 days beyond the 45 days otherwise provided in the Class Notice for all Class Members whose notice is re-mailed. The Administrator will inform the Class Member of the extended deadline with the re-mailed Class Notice.

7.4.5.  If the Administrator, the Parties, Class Counsel, or Defense Counsel are contacted by or otherwise discover any persons who believe they should have been included in the Class Data and should have received Class Notice, the Parties will expeditiously meet and confer in person or by telephone, and in good faith. in an effort to agree on whether to include them as Class Members. If the Parties agree, such persons will be Class Members entitled to the same rights as other Class Members, and the Administrator will send, via email or overnight delivery, a Class Notice requiring them to exercise options under this Agreement not later than 14 days after receipt of Class Notice, or the deadline dates in the Class Notice, which ever are later.

7.5.    Requests for Exclusion (Opt-Outs).

7.5.1.    Class Members who wish to exclude themselves (opt-out of) the Settlement must send the Administrator, by fax, email, or mail, a signed written Request for Exclusion not later than 45 days after the Administrator mails the Class Notice (plus an additional 14 days for Class Members whose Class Notice is re-mailed). A Request for Exclusion is a letter from a Class Member or his/her representative that reasonably communicates the Class Member's election to be excluded from the Settlement and includes the Class Member's name, address and email address or telephone number. To be valid, a Request for Exclusion must be timely faxed, emailed, or postmarked by the Response Deadline.

7.5.2.    The Administrator may not reject a Request for Exclusion as invalid because it fails to contain all the information specified in the Class Notice. The Administrator will accept any Request for Exclusion as valid if the Administrator can reasonably ascertain the identity of the person as a Class Member and the Class Member's desire to be excluded. The Administrator's determination will be final and not appealable or otherwise susceptible to challenge. If the Administrator has reason to question the authenticity of a Request for Exclusion, the Administrator may demand additional proof of the Class Member's identity. The Administrator's determination of authenticity will be final and not appealable or otherwise susceptible to challenge.

7.5.3.    Each Class Member who does not submit a timely and valid Request for Exclusion is deemed to be a Participating Class Member under this Agreement, entitled to all benefits, and bound by all terms and conditions of the Settlement, including the Participating Class Members' Releases under Paragraphs 5.2 and 5.3 of this Agreement, regardless of whether the Participating Class Member actually receives the Class Notice or objects to the Settlement.

7.5.4.    Each Class Member who submits a valid and timely Request for Exclusion is a Non-Participating Class Member and will not receive an Individual Class Payment or have the right to object to the Settlement. Because PAGA claims are subject to claim preclusion upon entry of the Judgment, Non-Participating Class Members who are Aggrieved Employees are deemed to release the claims identified in Paragraph 5.3 of this Agreement and are eligible for an Individual PAGA Payment.

7.6.    Challenges to Calculation of Class Period Workweeks and PAGA Pay Periods. Each Class Member will have 45 days after the Administrator mails the Class Notice (plus an additional 14 days for Class Members whose Class Notice is re-mailed) to challenge the number of Class Period

14

Workweeks and PAGA Pay Periods (if any) allocated to the Class Member in the Class Notice. The Class Member may challenge the allocation by communicating with the Administrator via fax, email, or mail. The Administrator must encourage the challenging Class Member to submit supporting documentation. In the absence of any contrary documentation, the Administrator is entitled to presume that the Class Period Workweeks contained in the Class Notice are correct so long as they are consistent with the Class Data. The Administrator's determination of each Class Member's allocation of Class Period Workweeks and/or PAGA Pay Periods will be final and not appealable or otherwise susceptible to challenge. The Administrator will promptly provide copies of all challenges to calculation of Class Period Workweeks and/or PAGA Pay Periods to Defense Counsel and Class Counsel and the Administrator's determination the challenges.

7.7.    Objections to Settlement.

7.7.1.    Only Participating Class Members may object to the class action components of the Settlement, including contesting the fairness of the Settlement, and/or amounts requested for the Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment and/or Class Representative Service Payments.

7.7.2.    Participating Class Members may send written objections to the Administrator, by fax, email, or mail. In the alternative, Participating Class Members may appear in Court (or hire an attorney to appear in Court) to present verbal objections at the Final Approval Hearing. A Participating Class Member who elects to send a written objection to the Administrator must do so not later than 45 days after the Administrator's mailing of the Class Notice (plus an additional 14 days for Class Members whose Class Notice was re-mailed).

7.7.3.    Non-Participating Class Members have no right to object to any of the class action components of the Settlement.

7.8.    Administrator Duties. The Administrator has a duty to perform or observe all tasks to be performed or observed by the Administrator contained in this Agreement or otherwise.

7.8.1.    Website, Email Address and Toll-Free Number. The Administrator will establish and maintain and use an internet website to post information of interest to Class Members including the date, time and location for the Final Approval Hearing and copies of the Agreement, Motion for Preliminary Approval, the Preliminary Approval Order, the Class Notice, the Motion for Final Approval, the Motion for Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, and Class Representative Service Payments, the Final Approval Order and Judgment. The Administrator will also maintain and monitor an email address and a toll-free telephone number to receive Class Member calls, faxes, and emails.

7.8.2.   <u>Requests for Exclusion (opt-outs) and Exclusion List</u>. The Administrator will promptly review on a rolling basis Requests for Exclusion to ascertain their validity. Not later than five days after the expiration of the deadline for submitting Requests for Exclusion, the Administrator will email a list to Class Counsel and Defense Counsel containing: (a) the names and other identifying information of Class Members who have timely submitted valid Requests for Exclusion ("Exclusion List"); (b) the names and other identifying information of Class Members who have submitted invalid Requests for Exclusion; (c) copies of all Requests for Exclusion from Settlement submitted (whether valid or invalid).

7.8.3.   <u>Weekly Reports</u>. The Administrator must, on a weekly basis, provide written reports to Class Counsel and Defense Counsel that, among other things, tally the number of: Class Notices mailed or re-mailed, Class Notices returned undelivered, Requests for Exclusion (whether valid or invalid) received, objections received, challenges to Class Period Workweeks and/or PAGA Pay Periods received and/or resolved, and checks mailed for Individual Class Payments and Individual PAGA Payments ("Weekly Report").

7.8.4.   <u>Class Period Workweek and/or PAGA Pay Period Challenges</u>. The Administrator has the authority to address and make final decisions consistent with the terms of this Agreement on all Class Member challenges over the calculation of Class Period Workweeks and/or PAGA Pay Periods. The Administrator's decision will be final and not appealable or otherwise susceptible to challenge.

7.8.5.   <u>Administrator's Declaration</u>. Not later than 14 days before the date by which Plaintiffs are required to file the motion for final approval of the Settlement, the Administrator will provide to Class Counsel and Defense Counsel, a signed declaration suitable for filing in Court attesting to its due diligence and compliance with all of its obligations under this Agreement, including, but not limited to, its mailing of Class Notice, the Class Notices returned as undelivered, the re-mailing of Class Notices, attempts to locate Class Members, the total number of Requests for Exclusion from Settlement it received (both valid or invalid), the number of written objections and attach the Exclusion List. The Administrator will supplement its declaration as needed or requested by the Parties and/or the Court. Class Counsel is responsible for filing the Administrator's declaration(s) in Court.

7.8.6.   <u>Final Report by Settlement Administrator</u>. Within 10 days after the Administrator disburses all funds in the Gross Settlement Amount, the Administrator will provide Class Counsel and Defense Counsel with a final report detailing its disbursements by employee identification number only of all payments made under this Agreement. At least 15 days before any deadline

set by the Court, the Administrator will prepare, and submit to Class Counsel
and Defense Counsel, a signed declaration suitable for filing in Court attesting
to its disbursement of all payments required under this Agreement. Class
Counsel is responsible for filing the Administrator's declaration in Court.

**8. DEFENDANTS' RIGHT TO WITHDRAW.**

If the number of valid Requests for Exclusion identified in the Exclusion List exceeds 5% of
the total of all Class Members, Defendants may, but are not obligated to, elect to withdraw from the
Settlement. The Parties agree that, if Defendants withdraw, the Settlement will be void *ab initio*, have
no force or effect whatsoever, and that neither Party will have any further obligation to perform under
this Agreement; provided, however, Defendants will remain responsible for paying all expenses
incurred by the Administrator to that point. Defendants must notify Class Counsel and the Court of
its election to withdraw not later than seven days after the Administrator sends the final Exclusion
List to Defense Counsel; late elections will have no effect.

**9. MOTION FOR FINAL APPROVAL.**

Not later than 28 days before the calendared Final Approval Hearing, Plaintiffs will file in
Court, a motion for final approval of the Settlement that includes a request for approval of the PAGA
settlement under Labor Code section 2699(l), a proposed Final Approval Order, and a proposed
Judgment (collectively, "Motion for Final Approval"). Plaintiffs will provide drafts of these documents
to Defense Counsel not later than seven days prior to filing the Motion for Final Approval. Class
Counsel and Defense Counsel will expeditiously meet and confer in person or by telephone, and in
good faith, to resolve any disagreements concerning the Motion for Final Approval.

    9.1. <u>Response to Objections</u>. Each Party retains the right to respond to any objection raised
by a Participating Class Member, including the right to file responsive documents in
Court no later than five court days prior to the Final Approval Hearing, or as otherwise
ordered or accepted by the Court

    9.2. <u>Duty to Cooperate</u>. If the Court does not grant final approval or conditions final
approval on any material change to the Settlement (including, but not limited to, the
scope of release to be granted by Class Members), the Parties will expeditiously work
together in good faith to address the Court's concerns by revising the Agreement as
necessary to obtain final approval. The Court's decision to award less than the amounts
requested for the Class Representative Service Payments, Class Counsel Fees Payment,
Class Counsel Litigation Expenses Payment and/or Administrator Expenses Payment
will not constitute a material modification to the Agreement within the meaning of
this paragraph.

    9.3. <u>Continuing Jurisdiction of the Court</u>. The Parties agree that, after entry of Judgment,
the Court will retain jurisdiction over the Parties, Action, and the Settlement solely for
purposes of: (i) enforcing this Agreement and/or Judgment, (ii) addressing settlement

Docusign Envelope ID: 6DAFF57F-2F78-4A16-A7FA-D4BAF99BAC7B

administration matters; and (iii) addressing such post-Judgment matters as are permitted by law.

9.4. <u>Waiver of Right to Appeal</u>. Provided the Judgment is consistent with the terms and conditions of this Agreement, specifically including the Class Counsel Fees Payment and Class Counsel Litigation Expenses Payment reflected set forth in this Settlement, the Parties, their respective counsel, and all Participating Class Members who did not object to the Settlement as provided in this Agreement, waive all rights to appeal from the Judgment, including all rights to post-judgment and appellate proceedings, the right to file motions to vacate judgment, motions for new trial, extraordinary writs, and appeals. The waiver of appeal does not include any waiver of the right to oppose such motions, writs or appeals. If an objector appeals the Judgment, the Parties' obligations to perform under this Agreement will be suspended until such time as the appeal is finally resolved and the Judgment becomes final, except as to matters that do not affect the amount of the Net Settlement Amount.

9.5. <u>Appellate Court Orders to Vacate, Reverse, or Materially Modify Judgment</u>. If the reviewing Court vacates, reverses, or modifies the Judgment in a manner that requires a material modification of this Agreement (including, but not limited to, the scope of release to be granted by Class Members), this Agreement will be null and void. The Parties will nevertheless expeditiously work together in good faith to address the appellate court's concerns and to obtain final approval of the Settlement and entry of Judgment. An appellate decision to vacate, reverse, or modify the Court's award of the Class Representative Service Payments or any payments to Class Counsel will not constitute a material modification of the Judgment within the meaning of this paragraph, as long as the Gross Settlement Amount remains unchanged.

## 10. AMENDED JUDGMENT.

If any amended judgment is required under Code of Civil Procedure section 384, the Parties will work together in good faith to jointly submit and a proposed amended judgment.

## 11. ADDITIONAL PROVISIONS.

11.1. <u>No Admission of Liability, Class Certification or Representative Manageability for Other Purposes</u>. This Agreement represents a compromise and settlement of highly disputed claims. Nothing in this Agreement is intended or should be construed as an admission by Defendants that any of the allegations in the Operative Complaint have merit or that Defendants have any liability for any claims asserted; nor should it be intended or construed as an admission by Plaintiffs that Defendants' defenses in the Action have merit. The Parties agree that class certification and representative treatment is for purposes of this Settlement only. If, for any reason the Court does not grant Preliminary Approval or Final Approval of the Settlement and/or does not enter Judgment, class certification will immediately be set aside and the Class will be

decertified (subject to further proceedings on a motion of any Party to certify or deny certification thereafter). Defendants reserve all available defenses to the claims in the Action, and Plaintiffs reserve the right to move for class certification on any grounds available and to contest Defendants' defenses. The Parties' willingness to stipulation to class certification as part of the Settlement will have no bearing on and will not be admissible in or considered in connection with, the issue of whether a class should be certified in a non-settlement context in this Action or in any context in any other lawsuit. Additionally, the Settlement, this Agreement, and the Parties' willingness to settle the Action will have no bearing on, and will not be admissible in connection with, any litigation (except for proceedings to enforce or effectuate the Settlement and/or this Agreement).

11.2.    <u>Benefits of Settlement to Plaintiffs and Class Members</u>. Plaintiffs and Class Counsel recognize the expense and length of continued proceedings necessary to litigate their disputes through trial and through any possible appeals. Plaintiffs have also taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation. Plaintiffs and Class Counsel are also aware of the burdens of proof necessary to establish liability for the claims asserted in the Action, both generally and in response to Defendants' defenses thereto, and the difficulties in establishing damages for the Class Members and Aggrieved Employees. Plaintiffs and Class Counsel has also taken into account the extensive settlement negotiations conducted. Based on the foregoing, Plaintiffs and Class Counsel have determined that the Settlement is a fair, adequate, and reasonable settlement, and is in the best interests of the Class Members and Aggrieved Employees.

11.3.    <u>Defendants' Reasons for Settlement</u>. Defendants have concluded that any further defense of this litigation would be protracted and expensive for all Parties. Substantial amounts of time and resources of Defendants have been and, unless this Settlement is approved, will continue to be devoted to the defense of the claims asserted by Plaintiffs and Class Members. Defendants have also taken into account the risks of further litigation in reaching its decision to enter into this Agreement. This Agreement is a compromise of disputed claims. Nothing contained in this Agreement and no action taken to carry out this Agreement may be construed or used as an admission by or against Defendants as to the merits or lack thereof of the claims asserted. The monies being paid as part of the Settlement are genuinely disputed and the Parties agree that the provisions of Labor Code section 206.5 are not applicable to this Settlement.

11.4.    <u>Confidentiality Prior to Preliminary Approval</u>. Plaintiff, Class Counsel, Defendants and Defense Counsel separately agree that, until the Motion for Preliminary Approval of Settlement is filed, they and each of them will not disclose, disseminate and/or publicize, or cause or permit another person to disclose, disseminate or publicize, any of the terms of the Agreement directly or indirectly, specifically or generally, to any person, corporation, association, government agency, or other entity except: (1) to the

Parties' attorneys, accountants, or spouses, all of whom will be instructed to keep this Agreement confidential; (2) counsel in a related matter; (3) to the extent necessary to report income to appropriate taxing authorities; (4) in response to a court order or subpoena; or (5) in response to an inquiry or subpoena issued by a state or federal government agency. Each Party agrees to immediately notify each other Party of any judicial or agency order, inquiry, or subpoena seeking such information. Plaintiff, Class Counsel, Defendants and Defense Counsel separately agree not to, directly or indirectly, initiate any conversation or other communication, before the filing of the Motion for Preliminary Approval, any with third party regarding this Agreement or the matters giving rise to this Agreement except to respond only that "the matter was resolved," or words to that effect. This paragraph does not restrict Class Counsel's communications with Class Members in accordance with Class Counsel's ethical obligations owed to Class Members.

11.5.    <u>Press Release</u>. Plaintiffs and Class Counsel agree not to issue a press release or otherwise notify the media about the terms of the Settlement or advertise or market any of the terms of the Settlement through written, recorded, or electronic communications. Plaintiffs and Class Counsel agree that, if they are contacted regarding this Action, they will only state that the Action exists and has been resolved. This provision is not intended to, and does not, limit Class Counsel from responding to questions from and providing advice to the Class Members regarding the Settlement after Preliminary Approval.

11.6.    <u>No Solicitation</u>. The Parties separately agree that they and their respective counsel and employees will not solicit any Class Member to opt out of or object to the Settlement, or appeal from the Judgment. Nothing in this paragraph will be construed to restrict Class Counsel's ability to communicate with Class Members in accordance with Class Counsel's ethical obligations owed to Class Members.

11.7.    <u>Integrated Agreement</u>. Upon execution by all Parties and their counsel, this Agreement together with its attached exhibits will constitute the entire agreement between the Parties relating to the Settlement, superseding any and all oral representations, warranties, covenants, or inducements made to or by any Party.

11.8.    <u>Attorney Authorization</u>. Class Counsel and Defense Counsel separately warrant and represent that they are authorized by Plaintiffs and Defendants, respectively, to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents reasonably required to effectuate the terms of this Agreement including any amendments to this Agreement.

11.9.    <u>Cooperation</u>. The Parties and their counsel will cooperate with each other and use their best efforts, in good faith, to implement the Settlement by, among other things, modifying the Agreement, submitting supplemental evidence and supplementing

points and authorities as requested by the Court. In the event the Parties are unable to agree upon the form or content of any document necessary to implement the Settlement, or on any modification of the Agreement that may become necessary to implement the Settlement, the Parties will seek the assistance of a mediator and/or the Court for resolution.

11.10.  <u>No Prior Assignments</u>. The Parties separately represent and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity and portion of any liability, claim, demand, action, cause of action, or right released and discharged by the Party in this Settlement.

11.11.  <u>No Tax Advice</u>. Neither Plaintiffs, Class Counsel, Defendants, nor Defense Counsel are providing any advice regarding taxes or taxability, nor will anything in this Settlement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

11.12.  <u>Modification of Agreement</u>. This Agreement, and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their representatives, and approved by the Court.

11.13.  <u>Agreement Binding on Successors</u>. This Agreement will be binding upon, and inure to the benefit of, the successors of each of the Parties.

11.14.  <u>Applicable Law</u>. All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the internal laws of the state of California, without regard to conflict of law principles.

11.15.  <u>Cooperation in Drafting</u>. The Parties have cooperated in the drafting and preparation of this Agreement. This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

11.16.  <u>Confidentiality</u>. To the extent permitted by law, all agreements made, and orders entered during Action and in this Agreement relating to the confidentiality of information will survive the execution of this Agreement.

11.17.  <u>Use and Return of Class Data</u>. Information provided to Class Counsel pursuant to Cal. Evid. Code section 1152, and all copies and summaries of the Class Data provided to Class Counsel by in connection with the mediation, other settlement negotiations, or in connection with the Settlement, may be used only with respect to this Settlement, and no other purpose, and may not be used in any way that violates any existing contractual agreement, statute, or rule of court. Not later than 90 days after the date when the Court discharges the Administrator's obligation to provide a Declaration confirming the final pay out of all Settlement funds, Plaintiffs will destroy, all paper

and electronic versions of Class Data received from Defendants unless, prior to the Court's discharge of the Administrator's obligation, Defendants make a written request to Class Counsel for the return, rather than the destructions, of Class Data.

11.18.    Headings. The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

11.19.    Calendar Days. Unless otherwise noted, all reference to "days" in this Agreement will be to calendar days. In the event any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such date or deadline will be on the first business day thereafter.

11.20.    Notice. All notices, demands or other communications between the Parties in connection with this Agreement will be in writing and deemed to have been duly given as of the third business day after mailing by United States mail, or the day sent by email or messenger, addressed as follows:

To Plaintiffs:
Tyler Woods
tyler.woods@wilshirelawfirm.com
Peter Horton
peter.horton@wilshirelawfirm.com
WILSHIRE LAW FIRM
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 784-3830

To Defendants:
Christian Keeney
christian.keeney@jacksonlewis.com
Alis Moon
alis.moon@jacksonlewis.com
JACKSON LEWIS, P.C.
200 Spectrum Center Drive, Suite 500
Irvine, California 92618
Telephone: (949) 885-1360

11.21.    Execution in Counterparts. This Agreement may be executed in one or more counterparts by facsimile, electronically (i.e. DocuSign), or email which for purposes of this Agreement will be accepted as an original. All executed counterparts and each of them will be deemed to be one and the same instrument if counsel for the Parties will exchange between themselves signed counterparts. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

11.22. <u>Stay of Litigation</u>. The Parties agree that upon the execution of this Agreement the litigation will be stayed, except to effectuate the terms of this Agreement. The Parties further agree that upon the signing of this Agreement that pursuant to CCP section 583.330 to extend the date to bring a case to trial under CCP section 583.310 for the entire period of this settlement process.

11.23. <u>Fair Settlement</u>. The Parties, Class Counsel, and Defense Counsel believe and warrant that this Agreement reflects a fair, reasonable, and adequate settlement of the Action and have arrived at this Agreement through arms-length negotiations, taking into account all relevant factors, both current and potential.

Dated: 5/14/2025 _____      _____

Plaintiff Dalette Ott

Dated: _____      _____

Loira Sanchez

Dated: May 14, 2025 _____      WILSHIRE LAW FIRM

By: _____

Tyler Woods
Peter Horton
Attorneys for Plaintiffs, individually and on behalf of all others similarly situated

Dated: _____      JACKSON LEWIS, P.C.

By: _____

Christian Keeney
Alis Moon
Attorneys for Defendants

23

11.22.   <u>Stay of Litigation</u>. The Parties agree that upon the execution of this Agreement the litigation will be stayed, except to effectuate the terms of this Agreement. The Parties further agree that upon the signing of this Agreement that pursuant to CCP section 583.330 to extend the date to bring a case to trial under CCP section 583.310 for the entire period of this settlement process.

11.23.   <u>Fair Settlement</u>. The Parties, Class Counsel, and Defense Counsel believe and warrant that this Agreement reflects a fair, reasonable, and adequate settlement of the Action and have arrived at this Agreement through arms-length negotiations, taking into account all relevant factors, both current and potential.


Dated: _____       _____
                              Plaintiff Dalette Ott


Dated: __5/14/2025_____      *Signed by:*
                              *Loira Sanchez*
                              6DCFA260966C4F3...
                              _____
                              Loira Sanchez


Dated: _____       WILSHIRE LAW FIRM


                              By: _____
                                  Tyler Woods
                              Peter Horton
                              Attorneys for Plaintiffs, individually and on behalf of all others similarly situated


Dated: _____       JACKSON LEWIS, P.C.


                              By: _____
                                  Christian Keeney
                                  Alis Moon
                              Attorneys for Defendants

23

further agree that upon the signing of this Agreement that pursuant to CCP section 583.330 to extend the date to bring a case to trial under CCP section 583.310 for the entire period of this settlement process.

11.23.  <u>Fair Settlement</u>. The Parties, Class Counsel, and Defense Counsel believe and warrant that this Agreement reflects a fair, reasonable, and adequate settlement of the Action and have arrived at this Agreement through arms-length negotiations, taking into account all relevant factors, both current and potential.

Dated: _____         _____
                                 Plaintiff Dalette Ott

Dated: _____         _____
                                 Loira Sanchez

Dated: _____         WILSHIRE LAW FIRM

                                 By: _____
                                     Tyler Woods
                                 Peter Horton
                                 Attorneys for Plaintiffs, individually and on behalf of all others similarly situated

Dated: _2025-05-14_____    JACKSON LEWIS, P.C.

                                 By: _____
                                     Christian Keeney
                                     Alis Moon
                                 Attorneys for Defendants

Dated: May 14, 2025
_____

By: Fansu Ku
_____
Fansu Ku
Litigation Counsel

Defendants Eaton Corporation Power Distribution Inc.;
Joslyn Sunbank Company, LLC; Sure Power Inc.; Cooper
Interconnect, Inc.; Eaton Aerospace LLC; and Cooper
Bussman, LLC