# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

DALETTE OTT and LOIRA SANCHEZ, individually, and on behalf of all others similarly situated

                    Plaintiffs,

        v.

COOPER INTERCONNECT, INC.; EATON CORPORATION; POWER DISTRIBUTION, INC.; JOSLYN SUBANK COMPANY, LLC; SURE POWER, INC.; EATON AEROSPACE LLC; COOPER BUSSMAN, LLC; and DOES 1 through 10, inclusive,

                    Defendants.

Case No. 2:23-cv-04501-SPG-JC

**ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [ECF NO. 62]**

Before the Court is the renewed Motion for Preliminary Approval of Class Action Settlement (ECF No. 62 ("Motion")) filed by Plaintiffs Dalette Ott ("Ott") and Loira Sanchez ("Sanchez," or, together with Ott, "Plaintiffs"). The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

# I.    BACKGROUND

The Court previously summarized the factual background of this case in its March 13, 2025, order granting, in part, and denying, in part, Plaintiff's Motion for Preliminary Approval of Class Action Settlement. *See* (ECF No. 51 (the "March 2025 Order") at 2-5). In brief, this case is a wage-and-hour class action lawsuit brought by Plaintiffs against Defendants Cooper Interconnect, Inc.; Eaton Corporation; Power Distribution Inc.; Joslyn Sunbank Company, LLC; Sure Power, Inc.; Eaton Aerospace LLC; and Cooper Bussman, LLC ("Defendants"). (ECF No. 40 ("FAC")). Plaintiffs allege a series of California Labor Code violations, violations of California's Unfair Competition Law, and wage-and-hour violations under California's Private Attorneys General Act ("PAGA"). (*Id.* at 16-29).

On December 11, 2024, the parties filed a Motion for Preliminary Approval of Class Action Settlement, requesting that the Court preliminarily certify the proposed class, appoint Plaintiffs as class representatives, appoint Wilshire Law Firm as Class Counsel, and approve the proposed Settlement Agreement. (ECF No. 41). In the March 2025 Order, the Court granted the motion to conditionally certify the class, appoint Plaintiffs Ott and Sanchez as class representatives, and appoint the Wilshire Law Firm as class counsel. (March 2025 Order at 28). However, the Court denied preliminary approval of the proposed Settlement Agreement and PAGA settlement, identifying several deficiencies with the information provided. (*Id.*). In partially denying the motion, the Court granted Plaintiffs leave to file a renewed motion addressing the deficiencies identified in the Court's Order.

Plaintiffs filed the instant Motion on May 15, 2025. (Mot.). Among other exhibits, the Motion is accompanied by a declaration from Plaintiff's Counsel Peter Horton (ECF No. 62-2 ("Horton Declaration"), declarations from Ott and Sanchez (ECF Nos. 62-1 ("Sanchez Declaration") and 63 ("Ott Declaration")), and a revised copy of the parties' Settlement Agreement (ECF No. 62-3 ("Settlement Agreement")). The revised Settlement Agreement includes the following terms:

### 1.    Class Definition

The Settlement Agreement defines the Class to be "all individuals who were employed by Defendants in the State of California and classified as non-exempt employees during the Class Period." (Settlement Agreement at 2). The Class Period is defined as "the period from April 25, 2019, to October 14, 2024, or the date of preliminary approval, whichever is earlier." (*Id.* at 3). As used in the Settlement Agreement, the term "Defendants" includes all the named Defendants in this action. (*Id.*). Based on Defendants' records, Plaintiffs estimate the Class to include 1,815 members. (Mot. at 12); (Horton Decl. ¶ 16).

### 2.    Settlement Amount

The gross settlement amount agreed upon by the parties is $3,500,000. (Settlement Agreement at 7). The Settlement Agreement allocates $175,000 of the gross settlement for settlement of claims for civil penalties under PAGA, 25% of which is allocated to individual Aggrieved Employees on a pro rata basis, and 75% of which is to be paid to the California Labor and Workforce Development Agency ("LWDA"). (*Id.* at 8). The Settlement Agreement also allocates up to $25,000 for an Administrator Expenses Payment. (*Id.*). Additionally, the Class Representative Plaintiffs seek a class representative award of $10,000 each. (*Id.* at 7). Finally, after taking into account attorney's fees, participating class members will be paid a share of the remaining settlement, calculated according to the number of class period workweeks worked during the Class Period. (*Id.* at 8). The Settlement Agreement explains that there are approximately 1,815 class members and 230,896 class period workweeks, and that class members typically worked the same number of hours each workweek and at similar rates of pay to one another. (*Id.* at 9). Settlement funds allocated to non-participating class members will be distributed to participating class members on a pro rata basis. (*Id.* at 9).

### 3.    Attorney's Fees and Costs

The class seeks to be represented by Peter Horton, Alan Wilcox, and Tyler Woods of Wilshire Law Firm, PLC ("Class Counsel"). *See* (Horton Decl. ¶¶ 47-50). Class

Counsel intends to seek up to one-third of the gross settlement amount (i.e., $1,166,666.67) as attorney's fees, and no more than $50,000 as reimbursement for expenses.  (Settlement Agreement at 7); (Mot. at 26).

### 4.    Release of Persons and Claims

The Settlement Agreement operates to release from claims certain "Released Parties," defined to mean (i) Defendants; (ii) parents, subsidiaries, or affiliates of Defendants; (iii) past or present officers, directors, or employees of these entities; and (iv) past or present "predecessors, parents, subsidiaries, affiliates, owners, shareholders, members, managers, benefit plans, operating units, divisions, agents, representatives, officers, directors, partners, employees, fiduciaries, insurers, attorneys, successors or assigns" of these entities.  (Settlement Agreement at 5).

Under the Settlement Agreement, the Class Representative Plaintiffs release the Released Parties from "(a) all claims related to their employment . . . ; (b) all claims that were, or reasonably could have been, alleged, based on the facts contained in the Operative Complaint and/or PAGA Notice . . . ; and (c) all PAGA claims that were, or reasonably could have been alleged based on facts contained in the Operative Complaint and/or PAGA Notice."  (*Id.* at 11).  The release "does not extend to any claims or actions to enforce this Agreement, or to any claims for vested benefits, unemployment benefits, disability benefits, social security benefits, [or] workers' compensation benefits that arose at any time."  (*Id.*).

Next, participating class members release the Released Parties from "all claims that were alleged, or reasonably could have been alleged, based on the facts and claims alleged in the Operative Complaint," including a list of enumerated claims.  (*Id.*).  The Settlement Agreement excludes various types of claims from the release, including disability and social security claims, as well as claims based on facts outside the Class Period.  (*Id.* at 12).

Finally, the Settlement Agreement includes a release of all claims "for PAGA penalties that were alleged, or reasonably could have been alleged, based on the facts and claims alleged in the Operative Complaint and/or PAGA Notice."  (*Id.*).  This release is

applicable to all "Aggrieved Employees," defined to mean "all individuals who were employed by Defendants in the State of California and classified as non-exempt employees during the PAGA Period," including both participating and non-participating class members. (*Id.*).

## II.    LEGAL STANDARD

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In considering such a request, the court must give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context." *Id.* Once a class is certified, Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before approving a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In the Ninth Circuit, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (citation omitted).

Court approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval. *See Tijero v. Aaron Bros., Inc.*, No. C 10–01089 SBA, 2013 WL 60464, at *6 (N.D. Cal. Jan. 2, 2013) ("The decision of whether to approve a proposed class action settlement entails a two-step process."); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) ("[A]pproval of a class action settlement takes place in two stages."). At the preliminary approval stage, the court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Woodard v. Labrada*, No. EDCV 16-00189 JGB (SPx), 2019 WL 4509301, at *3 (C.D. Cal. Apr. 23, 2019)

(quoting Manual for Complex Litigation (Fourth) § 21.632 (2012)). However, the "settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).

## III.    DISCUSSION

### A.    Rule 23(a)

As discussed above, in the March 2025 Order, the Court previously concluded that Rule 23's requirements of numerosity, commonality, typicality, and adequacy of representation were all satisfied for purposes of preliminary certification. *See* (March 2025 Order at 6-10); Fed. R. Civ. P. 23(a)(1)-(4). The Court reaffirms that holding. The Class is still estimated to include 1,815 members, *see* (Horton Decl. ¶ 16); the claims involve common allegations that Defendants "maintained a policy and practice" of not paying employees for all hours worked, (FAC ¶ 17); and the claims of the class representatives are typical of the class because they arise out of Defendants' alleged wage-and-hour violations. As to adequacy of representation, while lead counsel for Plaintiffs has been replaced by another attorney at the same firm, the Court is satisfied that representation remains adequate in light of the sworn declaration attesting to counsel's experience in handling class action employment litigation like this case. *See* (Horton Decl. ¶¶ 40-50). Accordingly, the settlement class satisfies Rule 23(a) for the purposes of preliminary approval.

### B.    Rule 23(b)

Similarly, the Court reaffirms its prior holding as to Rule 23(b). As the Court previously found, "[g]iven that the only claims here are based in allegations of a common policy or practice applied to all class members, Plaintiffs have shown that common questions of law or fact predominate over individual questions." (March Order at 11 (citing *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 403 (C.D. Cal. 2008)). And adjudicating these claims on a class-wide basis is superior to other methods of adjudication because of the large size of the class, the relatively small size of the individual claims, and the lack of

any other ongoing litigation concerning this controversy of which the Court is aware. *See* (March Order at 11-13).

### C.    Rule 23(e)

While the Court previously found that Plaintiffs had satisfied Rules 23(a) and (b), it denied preliminary approval on the grounds that Plaintiffs had not shown that the proposed settlement was "fair, reasonable, and adequate," as required by Rule 23(e)(2). Specifically, the Court identified the following deficiencies: (1) Plaintiff's estimates of the potential recovery included certain discrepancies and unexplained assumptions; (2) Plaintiffs inadequately identified costs, risks, and delays specific to their claims; (3) Plaintiffs' proposed class payments did not account for differences in pay and hours worked among the class members; (4) Plaintiffs' lead attorney withdrew from the case just after filing the motion, calling into question the adequacy of representation moving forward; (5) the proposed attorney's fees exceeded the standard Ninth Circuit benchmark and the Settlement Agreement contained a clear sailing provision; (6) the scope of the release of claims was unclear; and (7) Plaintiffs had not adequately explained the basis for granting $10,000 class representative awards. (March 2025 Order at 26). In light of Plaintiffs' amendments to the Settlement Agreement and the new exhibits provided with Plaintiff's renewed Motion, the Court will again consider whether Plaintiffs have met the requirements of Rule 23(e)(2) for preliminary approval.

Under the 2018 amendments to Rule 23(e)(2), courts must determine whether a proposed settlement is "fair, reasonable, and adequate" based on consideration of the following factors:

> (A)    the class representatives and class counsel have adequately represented the class;
> (B)    the proposal was negotiated at arm's length;
> (C)    the relief provided for the class is adequate, taking into account:
> > (i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Before the 2018 revisions to Rule 23(e), the Ninth Circuit had developed its own list of eight factors to be considered in assessing the fairness and adequacy of a proposed settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The Ninth Circuit has not directly spoken to how the 2018 amendments fit with this list of factors, though as one court has noted, the prior factors "correlate with the new language of the rule." *Gagnier v. Siteone Landscape Supply LLC*, No. SACV 21-01834-CJC (DFMx), 2023 WL 8116831, at *6 (C.D. Cal. June 6, 2023). The revised Rule 23(e) "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns," and explains that the goal of the amendment was "to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. Accordingly, the Court will examine the fairness of the proposed settlement agreement in light of the amended 23(e) factors, but will consider the pre-2018 factors "to the extent that they shed light on the inquiry mandated by the amended Rule 23(e)." *Gagnier*, 2023 WL 8116831, at *6.

      1.    <u>Adequacy of Representation by Class Representatives and Class Counsel</u>

The first factor requires that the class representatives and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). The Court previously found this factor to be met but expressed concern about the impact of the January 30, 2025,

withdrawal of Plaintiffs' lead attorney. (March 2025 Order at 15). Since the March 2025 Order, however, Plaintiffs have substituted three additional attorneys from Wilshire Law Firm—Peter Horton, Tyler Woods, and Alan Wilcox—who appear to be well qualified to represent Plaintiffs in this class action.[1] *See* (Horton Decl. ¶¶ 45, 49).

The Court otherwise reaffirms its previous conclusion that the class representatives and class counsel have provided adequate representation. Ott and Sanchez have each provided declarations, attesting to their work on this case, including conversing with class counsel, searching for supporting documents, reviewing the Settlement Agreement, and fielding questions from class members. *See* (Ott Decl. ¶¶ 6-11, 15; Sanchez Decl. ¶¶ 6-11, 15). And as the Court previously found, class counsel has provided adequate representation by engaging in motion practice and informal discovery. *See Musgrove v. Jackson Nurse Profs., LLC*, No. CV 17-6565 FMO (SSx), 2022 WL 18231364, at *4 (C.D. Cal. June 24, 2022) (concluding first Rule 23(e)(2) factor was met where parties engaged in substantial discovery and motion practice). Accordingly, the Court finds that this factor weighs in favor of preliminary approval.

### 2.    Arm's Length Negotiation

The second factor requires that the proposed settlement has been negotiated at "arm's length." Fed. R. Civ. P. 23(e)(2)(B). Because "[c]ollusion may not always be evident on the face of a settlement," courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Signs of collusion include (1) when the agreement awards counsel a disproportionate share of the settlement; (2) when the parties agree to a clear sailing arrangement through which the

---

[1] The Court notes that the Horton Declaration refers to the qualifications of a "Bradford Smith" and does not mention Tyler Woods. Even with this omission, however, the Court is persuaded that class counsel has sufficient experience handling similar matters to adequately represent Plaintiffs.

defendants do not object to fee requests by class counsel; and (3) when the agreement reverts unclaimed funds to the defendant rather than to the class fund. *Roes 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

In the March 2025 Order, the Court found that there was no apparent unfairness on the face of the negotiations but identified certain "subtle signs" that the agreement was not fully fair, reasonable, and adequate. Specifically, the Court was concerned about the provision assigning one-third of the gross settlement to attorney's fees and the clear sailing agreement under which Defendants agreed not to "oppose requests for the Class Counsel Fees Payment and Class Counsel Litigation Expense Payment provided that they do not exceed" the amounts listed in the Settlement Agreement. (Settlement Agreement at 7). While the Court found that this factor tended to support preliminary approval, the Court requested that Plaintiffs provide "detailed explanations to justify the attorney's fees provisions" in their renewed Motion. (March 2025 Order at 16).

Plaintiffs' explanations do not fully address the Court's concerns. In their Motion, Plaintiffs reiterate that courts in this Circuit have routinely approved allocations of one-third of the gross settlement amount. (Mot. at 26). However, while it is true that courts have approved such settlements, "[t]his circuit has established 25% of the common fund as a benchmark award for attorney's fees." *Hanlon*, 150 F.3d at 1029. Plaintiffs have not explained why this case deserves a higher allocation than the benchmark set by the Ninth Circuit. Plaintiffs also explain that Sections 6.1-6.3 of the Settlement required the parties to work together to draft this motion and resolve any disputes prior to filing, and that this cooperation has eliminated any potential issues which otherwise might have caused objections. (Mot. at 26). But the Court's concern was not with the parties' cooperation in preparing this Motion, but with the "clear sailing" provision providing that Defendants would not oppose the requests for attorney's fees. *See Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 949 ("Although clear sailing provisions are not prohibited, they by their nature deprive the court of the advantages of the adversary process in resolving fee determinations and are therefore disfavored." (internal quotation marks, citation, and

brackets omitted)).  The Court's concerns about these features of the Settlement Agreement remain.

Nevertheless, this factor does not prevent preliminary approval.  As Plaintiffs explain, class counsel intends to file a separate motion for attorney's fees and costs two weeks before the class opt-out deadline, allowing class members an opportunity to comment, and the Court a second opportunity to review the proposal.  (Mot. at 26).  Moreover, the Settlement Agreement provides that, "[i]f the Court approves a Class Counsel Fees Payment and/or a Class Counsel Litigation Expenses Payment less than the amounts requested, the Administrator will allocate the remainder to the Net Settlement Amount." (Settlement Agreement at 7).  Accordingly, the Court finds that this factor favors preliminary approval at this time.

### 3.  Adequacy of the Relief

The third Rule 23(e) factor requires the court to consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  The Court considers these factors in turn.

#### a)  Costs, Risks, and Delay of Trial and Appeal

In assessing this factor, "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes.  "The amount offered in settlement is generally considered to be the most important consideration of any class settlement." *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1075 (C.D. Cal. 2023) (citation omitted).  In determining whether the amount offered in settlement is fair, courts should "compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation." *Litty v. Merrill Lynch & Co., Inc.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (internal quotation marks

and citation omitted). However, "a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted). "Even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 611 (E.D. Cal. Oct. 8, 2015).

The Court previously found that Plaintiffs had provided insufficient information and therefore concluded that this factor weighed heavily against preliminary approval. The Court first identified several discrepancies and unsupported assumptions in Plaintiffs' estimates of the maximum and realistic recovery: (1) Plaintiffs, without explanation, applied higher violation rates for the rest and meal breaks than estimated; (2) Plaintiffs failed to explain the basis for the assumption that the class members worked an average of one hour of unpaid overtime per week; (3) Plaintiffs assumed that the violations of the rest and meal breaks amounted to one hour of unpaid time per violation but did not explain the basis for this estimate; and (4) Plaintiffs did not explain the basis for the estimate of $300 of unreimbursed expenses. The Court also found that Plaintiffs had not adequately explained the strengths and weaknesses of their case in a manner that would assist the Court in determining whether the settlement amount was reasonable. These deficiencies impeded the Court from assessing the maximum possible recovery, the ratio of the proposed settlement, and the reasonableness of this reduction.

Plaintiffs' renewed Motion addresses most of these deficiencies. First, Plaintiffs have adjusted the violation rates used in the meal and rest break calculations, reflecting a 7.7% violation rate for meal breaks and a 30% violation rate for rest breaks, as estimated by Plaintiffs' expert. (Mot. at 8.) Second, Plaintiffs explain that the one-hour estimate is based on conversations with Plaintiffs that revealed the unpaid compensation was attributable to sporadic, off-the-clock work amounting to 10-15 minutes per shift, multiplied by 4.8 shifts per week. Plaintiffs also state that they could not rely on Defendants' time and payroll records to calculate a more accurate overtime rate and,

instead, had to rely on estimates. (*Id.* at 7). Third, Plaintiffs now explain that their $300 estimate for unreimbursed expenses is taken from the price of two pairs of steel-toed boots, safety glasses, and other sporadic expenses. (*Id.* at 9). Lastly, Plaintiffs have provided some additional explanations of the weaknesses of the case and the reasons for the discount rates on the recovery, including that Defendants had certain written policies in place for meal period waivers, rest periods, and reimbursements. (*Id.* at 8-9). Plaintiffs now provide an estimated maximum recovery of $36,771,742.93 and a "realistic recovery" of $5,564,119.43. (*Id.* at 10). Given the proposed $3,500,000 settlement, this means that Plaintiffs would recover 9.5% of the maximum recovery and 62.9% of the realistic recovery.

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). Courts in this Circuit have, at times, approved settlements with similar ratios to the proposed settlement here. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement "of almost $2 million" that was "roughly one-sixth of the potential recovery"); *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327 NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (noting that 8% recovery rate was "especially low," but granting preliminary approval provided plaintiffs explain at final approval why the "recovery is warranted based on the circumstances of this case"); *Millan*, 310 F.R.D. at 612 n.10 (noting that a recovery of "approximately six percent . . . would not be outside the realm of possible approval considering the possible difficulties in Plaintiff's proof of this case"). As Plaintiffs argue, there are numerous obstacles to Plaintiffs' recovery of the maximum possible amount, including the difficulty of class certification, the difficulty of proving Defendants' knowledge of off-the-clock work, Defendants' written policies on meal and rest periods and reimbursement, waivers signed by employees, and the discretionary nature of civil penalties. Given the difficulties particular to this case, the Court is persuaded, for purposes of preliminary approval, that a 9.5% recovery rate is

1 reasonable and adequate under the circumstances. This factor therefore weighs in favor of

2 preliminary approval.

3         *b)*   *Effectiveness of Proposed Method of Relief Distribution*

4    Next, the Court must consider the method for processing claims to ensure the

5 proposed method facilitates filing legitimate claims. The Settlement Agreement provides

6 that individual class payments will be calculated by "(a) dividing the Net Settlement

7 Amount by the total number of Class Period Workweeks worked by all Participating Class

8 Members during the Class Period; and (b) multiplying the result by each Participating Class

9 Members' Class Period Workweeks." (Settlement Agreement at 8). Any additional funds

10 not claimed by non-participating class members will be distributed to participating class

11 members on a pro rata basis. (*Id.*). Funds are to be distributed by the Administrator within

12 fourteen days after receipt by mailing checks via First Class U.S. Mail. (*Id.* at 9-10). The

13 Administrator is to investigate and search for current Class Member addresses "using all

14 reasonably available sources, methods and means." (*Id.* at 3, 10). Any checks that go

15 unclaimed after the void date will be transmitted to the California Controller's Unclaimed

16 Property Fund. (*Id.* at 10).

17    The Court previously found that the method of distribution was "generally

18 adequate." (March 2025 Order at 21). However, the Court expressed concern about the

19 method of calculating class shares. Specifically, the Court was concerned that the proposed

20 allocation of funds ignored any differences in weekly hours worked and hourly wages

21 among members of the class. The Court therefore instructed Plaintiffs to consider an

22 alternative method of calculating class payments or explain why the formula is equitable

23 in spite of material differences among the class members.

24    In their renewed Motion, Plaintiffs rely on the same method of calculating class

25 payments. However, they point to a provision in the Settlement Agreement explaining that

26 the class members "all typically work[] similar positions, [are] scheduled to work the same

27 number of hours each Workweek, 40 hours per Workweek (essentially no part-time

28 employees), and at similar rates of pay to one another, averaging $25.57 per hour."

(Settlement Agreement at 9). Thus, while it appears that there may still be some differences in pay and hours worked among the class members, these differences are apparently minimal, such that they do not undercut the equitability of the agreement. On this record, the Court finds that the proposed method of distribution is adequate and weighs in favor of preliminary approval.

### c) Attorney's Fees

The Court next considers "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P 23(e)(2)(C)(iii). The Ninth Circuit has established a "benchmark award for attorney fees" of 25% of the gross settlement. *Hanlon*, 150 F.3d at 1029. Nevertheless, "[t]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). This benchmark can be adjusted depending on "(1) the result obtained; (2) the risk involved in the litigation; (3) the contingent nature of the fee; (4) counsel's efforts, experience, and skill; and (5) awards made in similar cases." *Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-00762-AWI-EPG, 2019 WL 7048791, at *9 (E.D. Cal. Dec. 23, 2019). "A court may also cross-check its percentage calculation against the lodestar method to determine the reasonableness of the award." *Id.*

As discussed above, the Court has concerns about both the proportion of the settlement allocated to attorney's fees and the clear sailing agreement between the parties. However, the Court will withhold judgment on this question until Plaintiffs have filed their anticipated motion for attorney's fees. In that motion, Plaintiffs should focus their argument on the factors identified above and explain how their efforts in this case differ from cases in which courts have applied the benchmark rate. Additionally, to assist the Court with the lodestar comparison, Plaintiffs should provide the approximate number of hours spent on this case and the corresponding billing rate of the attorneys who worked those hours. Notwithstanding the Court's concerns, for purposes of preliminary approval,

the Court finds that the attorney's fees are within the range of rates that courts have previously approved.

       d)  *Agreements Required to Be Identified Under Rule 23(e)(3)*

   Rule 23(e)(3) requires the parties to "file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Because the parties here filed no such statement, the Court considers this factor to be neutral.

      4.  <u>Equitable Treatment Among Class Members</u>

   Lastly, Rule 23(e) requires examination of whether a proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Court previously expressed concern about three aspects of the agreement: (1) the calculation of class shares failed to account for differences in pay and hours worked; (2) the release provisions contained ambiguity as to the scope of release; and (3) the proposed allocation of $10,000 to the class representative Plaintiffs exceeded awards previously granted by this Court.

   The Court is persuaded that the first two concerns have been addressed. As discussed above, Plaintiffs have explained that any differences among class members in hourly wages and hours worked per week are minimal, such that it is reasonable to apply a fixed rate to all class members. As to the release provisions, the parties have rewritten this portion of the Settlement Agreement to clarify that the general release applies to all participating class members and that the PAGA release applies to all Aggrieved Employees, including both participating and non-participating class members.

   As to the class representative award, however, the Court is not persuaded that $10,000 is appropriate under these circumstances. While the Ninth Circuit has not set a benchmark, incentive awards typically range from $2,000 to $10,000, with courts treating $5,000 payments as presumptively reasonable. *See, e.g.*, *In re Toys R Us-Delaware, Inc. — Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (awarding $5,000 incentive awards to the class representatives, noting the awards were "consistent with the amount courts typically award as incentive payments,"

and citing other case examples within the Circuit); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in [the Northern] District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount." (citations omitted)). This Court has previously approved awards of $5,000 under very similar circumstances. *See e.g.*, *Estrada v. Denny's Inc.*, Case No. 2:22-CV-00572-SPG (AGRx), slip op. at 27 (C.D. Cal. July 29, 2024) (Garnett, J.) (finding incentive award of $5,000 "to be reasonable and proportional to the effort expended by the plaintiff in th[e] case," which included devoting no less than 45 hours to the litigation, providing significant and detailed information to class counsel, being directly involved in settlement negotiations, agreeing to a broader release of her claims than other class members, and taking on some risk to her reputation by serving as the class representative). The Court is not inclined to diverge from its prior practice under the circumstances of this case.

However, as with the attorney's fees, Plaintiffs state that they will seek approval of the class representative award in a later motion. *See* (Settlement Agreement at 7). The Settlement Agreement also indicates that, if the Court approves a smaller class representative award, the remainder will be added to the net settlement amount. (*Id.*). The Court's concern with the class representative award therefore does not impede preliminary approval, and this factor otherwise weighs in favor of approval.

### 5. Weighing the Factors

Based on the above discussion, the Court finds that all of the factors favor granting preliminary approval. While the Court remains concerned about the attorney's fees and class representative awards, Plaintiffs will have an opportunity to provide more detailed briefing on these issues in their anticipated motion for attorney's fees and class representative service payments. The renewed Motion otherwise addresses all of the concerns identified by the Court in the March 2025 Order. Accordingly, the Court GRANTS preliminary approval of the class settlement.

### D.    Sufficiency of Notice

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). Notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks and citation omitted).

The Settlement Agreement provides that not later than 20 days after preliminary approval of the settlement, Defendants will deliver the Class Data to the Settlement Administrator, consisting of the name, last-known mailing address, Social Security Numbers, and dates of employment of the class members. (Settlement Agreement at 2-3, 9). Within fourteen days of receiving the Class Data, the Settlement Administrator will send Class Notice to all Class Members via first-class United States Postal Service mail. (*Id.* at 14). Mailing the Notice to the last known addresses of class members "constitutes the best practicable notice under the circumstances." *Trujillo v. UnitedHealth Grp. Inc.*, 5:17-cv-2547-JFW (KKx), 2019 WL 13240414, at *2 (C.D. Cal. July 19, 2019). Furthermore, for any returned Class Notices, the Settlement Administrator will re-mail the notice to any forwarding address or, if none, will conduct an address search and mail the notice to the most current address obtained. (Settlement Agreement at 14). The Court finds this method to be sufficient.

From the Court's review of the proposed Class Notice, the Court also finds that the Class Notice clearly describes: (i) the nature of the action and class claims and the terms of the Settlement Agreement; (ii) the definition of the class and the nature and extent of the release of claims; (iii) the maximum attorney's fees; (iv) the procedure and timing for objections and requests for exclusion; and (v) subject to the Court's schedule, the date and

location of the Fairness Hearing and the binding effect of any class judgment entered. *See* (ECF No. 42-2 at 26-34).[2] Thus, the Court finds that the proposed Class Notice sufficiently comports with due process.

### E. PAGA

Finally, the Court must consider the proposed PAGA settlement. There are "fundamental differences between PAGA actions and class actions," including that "class certification is not required to pursue a PAGA representative action." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (internal quotation marks, citation, and alterations omitted). The plaintiffs in a PAGA action act "as the proxy or agent of the state's labor law enforcement agencies," and any judgment "binds all those who would be bound by an action brought by the government, *including* nonparty employees." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citation omitted). "[B]ecause a settlement of PAGA claims compromises a claim that could otherwise be brought by the state, the PAGA provides that 'court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA].'" *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017) (quoting Cal. Lab. Code § 2699(s)(2)). While the statute does not specify the applicable standard for reviewing PAGA settlements, "a number of district courts have applied a Rule 23-like standard, asking whether the settlement of the PAGA claims is fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes." *Haralson*, 383 F. Supp. 3d at 972 (internal quotation marks and citation omitted).

---

[2] Plaintiffs refer to the Class Notice as Exhibit A of the Settlement Agreement in their Motion. *See* (Mot. at 28). However, the Settlement Agreement provided in association with this Motion contains no additional exhibits. In finding that the Class Notice is sufficient, the Court instead references the Class Notice previously attached as Exhibit A to the Settlement Agreement in the prior motion for preliminary approval. (ECF No. 42-2). To the extent the Class Notice used by the parties differs from this document, the parties must notify the Court of any differences.

Plaintiffs here estimate that the maximum potential liability under PAGA is $6,290,500, based on the statutory $100 penalty for initial violation multiplied by the 62,905 pay periods within the one-year statute of limitations. (Horton Decl. ¶ 24). The Settlement Agreement provides for a PAGA recovery of $175,000, with 75% allocated to the California LWDA and 25% to Aggrieved Employees based on their share of the total PAGA pay periods. (Settlement Agreement at 8). This amounts to 5% of the total settlement amount and 2.8% of the estimated maximum potential liability.

While courts have "raised concerns about settlements of less than 1% of the total value of a PAGA claim," *Jennings v. Open Door Mktg., LLC*, No. 15-CV-04080-KAW, 2018 WL 4773057, at *9 (N.D. Cal. Oct. 3, 2018), the 2.8% recovery rate here is within the range of results that courts have approved. *See, e.g.*, *Ramirez*, 2017 WL 3670794, at *5 (approving PAGA penalty of "4.5% of total estimated possible recovery"); *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087-DMR, 2021 WL 1788447, at *8 (N.D. Cal. May 5, 2021) ("[W]hile the PAGA recovery represents approximately 2.4% of the total estimated value of the PAGA claims, courts have approved PAGA settlements of lower percentages where the class recovery was otherwise fair and adequate."). Similarly, to the extent that the court should instead look to the ratio of the PAGA settlement to the overall settlement, *see Haralson*, 383 F. Supp. 3d at 973 (noting split among courts as to the appropriate inquiry), the ratio of 5% is within the range that courts have approved. *See, e.g.*, *Syed v. M-I, LLC*, No. 1:12-cv-01718-DAD-MJS, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22, 2017) (approving $100,000 PAGA settlement, amounting to 2.53% of the gross settlement amount); *Kryzhanovskiy v. Amazon.com Servs., Inc.*, No. 2:21-cv-01292-BAM, 2024 WL 4189936, at *16 (E.D. Cal. Sept. 13, 2024) ("The PAGA payment of approximately 3% of the Gross Settlement Fund falls within the range of penalties approved by courts."). Further, as the Court found above, the concurrent Rule 23 class settlement provides "fair compensation to the class members as employees" and therefore has a "deterrent effect upon the defendant employer and other employers, an objective of PAGA." *O'Connor*, 201 F. Supp. 3d at 1134 (applying a "sliding scale"

approach to evaluate PAGA settlements made in conjunction with class settlements and stating that "if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled").   Given the class settlement and the fact that the PAGA settlement is within the range of approval, the Court concludes, for the purposes of preliminary approval, that the proposed PAGA settlement is fair, adequate, and reasonable.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion and ORDERS as follows:

1. The settlement as set forth in the Amended Class Action and PAGA Settlement Agreement (ECF No. 62-3) is preliminarily approved;

2. The Class as defined in the Settlement Agreement is preliminarily certified for purposes of settlement;

3. For settlement purposes only, the Court hereby appoints:

    a. Plaintiffs Dalette Ott and Loira Sanchez as Class Representatives;

    b. Wilshire Law Firm, PLC as Class Counsel; and

    c. CPT Group, Inc. as the third-party Settlement Administrator;

4. The proposed Class Notices (ECF No. 42-2 at 26-34) must be disseminated to the proposed Settlement Class as provided in the Settlement Agreement;

5. The Final Approval Hearing shall be held on October 22, 2025, at 1:30 p.m. in the United States District Court, Central District of California, Courtroom 5C, located at 350 W. 1st Street, Los Angeles, California, 90012;

6. The Court sets a briefing schedule as follows:

    a. Plaintiffs' motion for attorneys' fees and costs must be filed at least fourteen (14) days before the deadline for Settlement Class Members to submit objections to the settlement;

    b. Plaintiffs' motion for final approval of the settlement and for Class Representative service payments must be filed at least twenty-eight (28) days before the Final Approval Hearing;

c. Defendant's Counsel shall file with the Court a declaration attesting that CAFA Notice has properly been served pursuant to 28 U.S.C. § 1715 at least fourteen (14) days before the Final Approval Hearing; and

d. The parties shall file their reply briefs, if any, at least fourteen (14) days before the Final Approval Hearing.

**IT IS SO ORDERED.**

DATED:  June 23, 2025

_____

HON. SHERILYN PEACE GARNETT

UNITED STATES DISTRICT JUDGE