**WILSHIRE LAW FIRM, PLC**
Tyler Woods (SBN 232464)
tyler.woods@wilshirelawfirm.com
alan Wilcox (SBN 287476)
Alan.wilcox@wilshirelawfirm.com
james Yoo (SBN 310680)
James.yoo@wilshirelawfirm.com
Ruby Carrera (SBN 343745)
ruby.carrera@wilshirelawfirm.com
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALETTE OTT and LOIRA SANCHEZ, individually, and on behalf of all others similarly situated,<br><br>_Plaintiffs,_<br><br>v.<br><br>COOPER INTERCONNECT, INC., a corporation; EATON CORPORATION, a corporation; POWER DISTRIBUTION INC., a corporation; JOSLYN SUNBANK COMPANY, LLC, a limited liability company; SURE POWER, INC., a corporation; EATON AEROSPACE LLC, a limited liability company; COOPER BUSSMAN, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>_Defendants._ | Case No. 2:23-CV-04501-SPG-JC<br>Assigned to: Hon. Sherilyn Peace, Dept. 5C<br>Complaint Filed: October 22, 2025<br>Trial Date: Not set.<br><br>**CLASS AND PAGA REPRESNTATIVE ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:      October 22, 2025<br>Hearing Time:      1:30 p.m.<br>Hearing Dept.:      5C |

## <u>NOTICE OF MOTION AND MOTION</u>

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on October 22, 2025 at 1:30 p.m.., in Courtroom 5C of the United States District Court for the Central District of California, located at 350 W 1st Street, Los Angeles, CA 90012, Plaintiffs Dalette Ott and Loira Sanchez ("Plaintiffs") will, and hereby do move for an order approving Plaintiff's Motion for Final Approval of Class Action Settlement, Attorneys' Fees, and Costs ("Motion") against Defendants Cooper Interconnect, Inc., Eaton Corporation, Power Distribution Inc., Joslyn Sunbank Company, LLC, Sure Power, Inc., Eaton Aerospace LLC, and Cooper Bussman, LLC (collectively the "Defendants"). The proposed settlement is set forth in the accompanying Amended Class Action and PAGA Settlement Agreement ("Settlement Agreement") attached as Exhibit 1 to the Declaration of Tyler Woods ("Woods Decl.") filed in support of this Motion.

This Motion will be based on this notice; the accompanying Memorandum of Points and Authorities; the Declarations of Tyler Woods, Christian Labow, Dalette Ott, and Loira Sanchez; the complete files and records in this action; and any oral argument given in support of this Motion. The Labor Workforce Development Agency has been served with this motion and the Settlement Agreement as set forth in the accompanying proof of service.

Dated: September 24, 2025     Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

By: _____

Tyler Woods
Alan Wilcox
James Yoo
Ruby Carrera
Attorneys for Plaintiffs

i

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION. ................................................................ i

TABLE OF CONTENTS ............................................................................... iii, iv

TABLE OF AUTHORITIES ............................................................................ v, vi

MEMORANDUM OF POINTS AND AUTHORITIES…………………………………………1

I.    INTRODUCTION ...........................................................................................1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT ..........................2

    A.  Plaintiff's Claims .................................................................................2

    B.  Discovery and Investigation .................................................................2

    C.  Settlement Negotiations and Agreement................................................3

    D.  Preliminary Approval and Overwhelming Support for the Settlement .....3

    E.  Key Terms of the Proposed Settlement................................................4

III.  THE SETTLEMENT MERITS FINAL APPROVAL ...................................9

    A.  The Settlement Reflects a Reasonable Compromise .............................10

    B.  The Settlement was Reached After Arms-Length Negotiations Following Formal and Informal Discovery .............................................11

    C.  Plaintiff's Counsel Has Substantial Class Action Experience ................11

    D.  There Are No Objections to the Settlement ...........................................12

IV.   THE COURT SHOULD AWARD PLAINTIFF THE REQUESTED AMOUNTS OF FEES, COSTS AND ENHANCEMENT PAYMENTS. ....13

    A.  A Fee Award Based on One-Third of the Common Fund is Standard ....13

    B.  While the Lodestar Method is Not Necessary in Common Fund Cases, Courts May Perform a Cross-Check to Award Fees................................14

        1.  Class Counsel's Rates Have Been Approved by Several Courts.....16

        2.  Class Counsel's Requested Fees are Derived Using a Negative Multiplier. .......................................................................................16

    C.  Costs Are Reasonable.............................................................................18

1

    D.    The Enhancement Payments to the Plaintiff is Reasonable. .................... 19

2    E.    Administration Expenses Should be Approved. ..................................... 21

3  V.  CONCLUSION .............................................................................................. 21

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

# TABLE OF AUTHORITIES

STATE CASES

*Cellphone Term. Fee Cases* (2010)
   186 Cal. App. 4th 1380 ................................................................ 19

*Chavez v. Netflix, Inc.* (2008)
   162 Cal.App.4th 43 .............................................................. 12, 16

*Clark v. Am. Residential Services LLC* (2009)
   175 Cal. App. 4th 785 ................................................................ 19

*Dunk v. Ford Motor Co.* (1996)
   48 Cal.App.4th 1794 ................................................................... 8

*Gentry v. Super. Ct.* (2007) 42 Cal.4th 443 ................................ 18

*In re Consumer Privacy Cases* (2009)
   175 Cal.App.4th 545 ................................................................. 13

*Ketchum v. Moses* (2001)
   24 Cal.4th 1122 .................................................................. 15, 16

*Kullar v. Foot Locker Retail, Inc.* (2008)
   168 Cal.App.4th 116 ......................................................8, 10, 11

*Lealao v. Beneficial California, Inc.* (2000)
   82 Cal.App.4th 19 ..................................................................... 14

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010)
   186 Cal.App.4th 399, 412 ......................................................... 18

*Neary v. Regents of Univ. of California* (1992)
   3 Cal.4th 272 .............................................................................. 8

*Raining Data Corp. v. Barrenechea* (2009)
   175 Cal.App.4th 1363 ............................................................... 13

*Roos v. Honeywell Int'l., Inc.* (2015)
   241 Cal. App. 4th 1472 ............................................................. 15

*United Steelworkers of America v. Phelps Dodge Corp.* (1990)
   896 F.2d 403 .............................................................................. 14

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

*Wershba v. Apple Computers, Inc.* (2001)
   91 Cal.App.4th 224 ........................................................................ 8, 9, 14


<u>**FEDERAL CASES**</u>

*Barbosa v. Cargill Meat Solutions Corp.*
   (E.D.Cal.2013) 297 F.R.D. 431 ................................................... 14

*Beaver v. Tarsadia Hotels*
   (S.D. Cal. Sept. 28, 2017) 2017 WL 4310707 .................................... 12

*Chun-Hoon v. McKee Foods Corp.*
   (N.D. Cal. 2010) 716 F. Supp. 2d 848 ............................................... 15

*Frank v. Eastman Kodak Co.*
   (W.D.N.Y. 2005) 228 F.R.D. 174 ...................................................... 18

*Hanlon v. Chrysler Corp.*
   (9th Cir.1998) 150 F.3d 1011 ............................................................ 11

*Harris v. Marhoefer*
   (9th Cir. 1994) 24 F.3d 16 ................................................................. 17

*Hughes v. Microsoft Corp.*
   (W.D.Wash. 2001) 2001 U.S. Dist. LEXIS 5976, 2001 WL 34089697 ............. 11

*In re Lifelock, Inc. Marketing and Sales Practices Litigation*
   (D. Ariz. 2010) 2010 WL 3715138 .................................................... 11

*Moreno v. Pretium Packaging, L.L.C.*
   (C.D. Cal. Aug. 6, 2021) No. 8:19-cv-02500-SB, 2021 WL 3673845 ............... 14

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*
   (S.D. Cal. 2017) 292 F. Supp. 3d 1018 .............................................. 17

*Rodriguez v. W. Publ'g Corp.* (9th Cir. 2009) 563 F.3d 948 ................................. 18

*Rutti v. Lojack Corp.*
   (C.D. Cal. July 31, 2012) No. CV 06–00350 DOC, 2012 WL 3151077 ............ 17

*Van Vranken v. Atlantic Richfield Company*
   (N.D. Cal. 1995) 901 F. Supp. 294 ............................................... 12, 14

v

1

**TREATISES**

Conte & Newberg, *Newberg on Class Actions* (3rd Ed.) § 14.03.) ........................ 12
2

3

**OTHER SOURCES**
4

Theodore Eisenberg & Jeffrey P. Miller, "Incentive Awards to Class Action
    Plaintiffs: An Empirical Study", 53 UCLA L. Rev. 1303 (2006) ........................ 18
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3    Plaintiffs seek final approval of a proposed $3,500,000.00 non-reversionary,

4    wage and hour class action settlement with Defendants (Plaintiff and Defendants

5    are referred to collectively as the "Parties").    The Settlement will provide

6    substantial monetary payments to approximately 1,972 Class Members and

7    satisfies all of the criteria for approval under FRCP Rule 23.  (*See* Woods Decl., ¶

8    10; *see also* Declaration of Christian Labow filed in support of this Motion

9    ["Labow Decl."], ¶ 6.)

10    The proposed settlement also satisfies all the criteria for settlement approval

11    under California law.  A presumption of fairness exists as the Settlement was

12    reached through extensive, mediated arm's-length negotiations, sufficient

13    investigation and discovery, which allowed Class Counsel to act intelligently, and

14    Class Counsel is experienced in similar wage and hour litigation.  Upon the Court's

15    approval of the settlement, participating class members will receive an ***average***

16    ***estimated individual <u>net</u> settlement payment of approximately $1,049.87,*** with the

17    ***highest individual estimated <u>net</u> settlement payment being approximately***

18    ***$2,480.90***.  (*See* Labow Decl., ¶ 14.)    As of filing this Motion, the Settlement

19    Administrator has received **no objections** and **only three requests for exclusion**.

20    (*See id.* at ¶¶ 9-12.)  Thus, the proposed Settlement is fair, reasonable, and adequate

21    and is in the best interests of the Settlement Class Members.

22    Final approval of the settlement is warranted as it satisfies all the criteria for

23    approval under California law.  As demonstrated in the Motion for Preliminary

24    Approval of Class Action Settlement, the proposed Settlement provides excellent

25    benefits to the class, particularly considering the complexities and risks of the case.

26    Accordingly, Plaintiffs request that the Court grant final approval of the proposed

27    Settlement.

28    \\\

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

## II. **SUMMARY OF THE LITIGATION AND SETTLEMENT**

### A. **Plaintiffs' Claims**

On April 25, 2023, Plaintiff filed a putative wage and hour class action complaint against Defendants for: (1) failure to pay minimum and straight time wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay final wages at termination; (6) failure to provide accurate itemized wage statements; (7) failure to indemnify employees for expenditures; and (8) violation of California's Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq*. (*See* Woods Decl., ¶ 3.) On June 8, 2023, Defendants removed this matter to federal court on the basis of diversity jurisdiction. Plaintiff was unsuccessful in remanding the case back to state court. (*Id.*) On May 12, 2023, Plaintiff Sanchez sent notice to Defendants and the California Labor & Workforce Development Agency ("LWDA") alleging similar wage-and-hour violations pursuant to the Private Attorneys General Act ("PAGA") (Cal. Labor Code §§ 2699, *et seq.*). (Id. at ¶ 4.) On September 15, 2023, Plaintiff Sanchez separately filed a PAGA-only action in the Ventura County Superior Court. (*Id*.) On November 8, 2024, Plaintiffs filed a First Amended Complaint against Defendants, consolidating the Class and PAGA actions and adding named Defendants Power Distribution, Sunbank, Sure Power, Eaton Aerospace, and Cooper Bussman. (*Id.*)

### B. **Discovery and Investigation**

Following the filing of the initial complaint, the Parties exchanged documents and information before mediating this action. (Woods Decl., ¶ 5.) Defendants produced a sample of time and pay records for the class members. (*Id*.) Defendants also provided employee handbooks outlining its wage and hour policies and practices during the class period and information regarding the total number of current and former employees in its informal discovery responses. (*Id.*)

After reviewing documents regarding Defendants' wage and hour policies and

practices and analyzing Defendants' timekeeping and payroll records, Class Counsel was able to evaluate the probability of class certification, success on the merits, and Defendants' maximum monetary exposure for all claims.  (*Id.* at ¶ 6.)  Class Counsel also investigated the applicable law regarding the claims and defenses asserted in the litigation.  (*Id.*)  Class Counsel reviewed these records and prepared a damage analysis assessing Defendants' potential liability prior to mediation.  (*Id.*)

**C.    Settlement Negotiations and Agreement**

On August  14,  2024, the Parties participated in private mediation with experienced class action mediator, Monique Ngo-Bonnici, Esq. (Woods Decl., ¶ 7.)  The settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial.  (*Id.*)  The Parties went into the mediation willing to explore the potential for a settlement of the dispute, but each side was also prepared to litigate their position through trial and appeal if a settlement had not been reached.  (*Id.*)  After extensive negotiations and discussions regarding the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses, the Parties reached a settlement, the material terms of which are encompassed within the Settlement Agreement.  (*Id.* at ¶ 8; see also **Exhibit 1** attached thereto, a true and correct copy of the Parties' Amended Class Action and PAGA Settlement Agreement ["Settlement" or "Settlement Agreement"].)

Class Counsel has conducted a thorough investigation into the facts of this case.  (*Id.* at ¶ 9.) Based on the foregoing discovery and their own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members in light of all known facts and circumstances, the risk of significant delay, the defenses that could be asserted by Defendants both to certification and on the merits, trial risk, and appellate risk.  (*Id.*)

**D.    Preliminary Approval and Support for the Settlement**

On June 23, 2025, the Court granted Plaintiffs' Motion for Preliminary

3

Approval of the Settlement.  (*See* Woods Decl., ¶ 10.)

The deadline for class members to opt out or object to the Settlement was September 18, 2025, and the reaction of the Class to the settlement so far has been overwhelmingly positive.  (Woods Decl., ¶ 10; *see also* Labow Decl., ¶¶ 6-12.) Indeed, as of the filing of this Motion, *only three* Class Members have opted out of the settlement and no Class Member has objected to the Settlement.  (*See id.*)

### E.    **Key Terms of the Proposed Settlement**

Under the Settlement Agreement, Defendants will pay $3,500,000.00 to resolve this litigation.  The key terms include:

1.    Settlement Class: For purposes of this Settlement Agreement only, the Parties agree to the certification of the classes pursuant to California Code of Civil Procedure § 382 defined as: "means all individuals who were employed by Defendants in the State of California and classified as non-exempt employees during the Class Period" (Settlement, ¶ 1.5.)

2.    Class Period: "April 25, 2019, to October 14, 2024, or the date of preliminary approval, whichever is earlier."  (Settlement, ¶ 1.13.)

3.    Participating Class Members: "Each Class Member who does not submit a timely and valid Request for Exclusion is deemed to be a Participating Class Member under this Agreement, entitled to all benefits, and bound by all terms and conditions of the Settlement, including the Participating Class Members' Releases under Paragraphs 5.2 and 5.3 of this Agreement, regardless of whether the Participating Class Member actually receives the Class Notice or objects to the Settlement."  (Settlement, ¶ 7.5.3.)

4.    Aggrieved Employee: "means all individuals who were employed by Defendants in the State of California and classified as non-exempt employees during the PAGA Period."  (Settlement, ¶ 1.4.)

5.    PAGA Period: "means the period from September 29, 2021 to September 24, 2023."  (Settlement, ¶ 1.31.)

6.     <u>Gross Settlement Amount</u>: "means $3,500,000, which is the total amount Defendants agree to pay under the Settlement except as provided in Paragraph 4.1 below. The Gross Settlement Amount will be used to pay Individual Class Payments, Individual PAGA Payments, the LWDA PAGA Payment, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, Class Representative Service Payments, and the Administration Expenses Payment." (Settlement, ¶ 1.22.)

7.     <u>Uncashed Checks</u>: "For any Class Member whose Individual Class Payment check and/or Individual PAGA Payment check is uncashed and cancelled after the void date, the Administrator shall transmit the funds represented by such checks to the California Controller's Unclaimed Property Fund in the name of the Class Member thereby leaving no 'unpaid residue' subject to the requirements of California Code of Civil Procedure Section 384, subd. (b)."  (Settlement, ¶ 4.4.3.)

8.     <u>Participating Class Members Released Claims</u>: "All Participating Class Members, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, release Released Parties from all claims that were alleged, or reasonably could have been alleged, based on the facts and claims alleged in the Operative Complaint and/or PAGA Notice, and ascertained in the course of the Action, including the following claims for relief: (i) failure to pay minimum and straight wages; (ii) failure to pay overtime wages; (iii) failure to provide meal periods; (iv) failure to authorize and permit rest periods; (v) failure to timely pay final wages during employment and at termination; (vi) failure to provide accurate itemized wage statements; (vii) failure to indemnify employees for expenditures; (viii) unfair business practices; (ix) unlawful time rounding; (x) failure to pay overtime, break premiums, and sick pay at the regular rate of pay; (xi) alleged violation of Labor Code sections 201, 202, 203, 204, 204b, 210, 216, 218, 218.5, 218.6, 223, 226, 226.3, 226.7, 432, 510, 512, 551, 552, 558, 1174, 1174.5, 1771, 1774, 1776,

1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, 2800, 2802, 2804, and any applicable Industrial Welfare Commission Wage Orders; (xii) an alleged violation of Business & Professions Code section 17200, *et seq*.; and (xiii) all claims for damages, penalties, interest, attorneys' fees, costs, injunctive relief, restitution, and any other equitable relief in California statute, ordinance, regulation, common law, or other source of law. Except as set forth in Paragraph 5.3 of this Agreement, Participating Class Members do not release any other claims, including claims for vested benefits, wrongful termination, violation of the Fair Employment and Housing Act, unemployment insurance, disability, social security, workers' compensation, or claims based on facts occurring outside the Class Period." (Settlement, ¶ 5.2.)

9.    Released PAGA Claims by Aggrieved Employees: "All Aggrieved Employees, including Participating Class Members who are Aggrieved Employees and Non-Participating Class Members who are Aggrieved Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, the Released Parties from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the facts and claims alleged in the Operative Complaint and/or PAGA Notice, and ascertained in the course of the Action, including claims for: (i) failure to pay minimum and straight wages; (ii) failure to pay overtime wages; (iii) failure to provide meal periods; (iv) failure to authorize and permit rest periods; (v) failure to timely pay final wages during employment and at termination; (vi) failure to provide accurate itemized wage statements; (vii) failure to indemnify employees for expenditures; (viii) unfair business practices; (ix) unlawful time rounding; (x) failure to pay overtime, break premiums, and sick pay at the regular rate of pay; (xi) alleged violation of Labor Code sections 201, 202, 203, 204, 204b, 210, 216, 218, 218.5, 218.6, 223, 226, 226.3, 226.7, 432, 510, 512, 551, 552, 558, 1174, 1174.5, 1771, 1774, 1776,

1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, 2800, 2802, 2804, and any applicable Industrial Welfare Commission Wage Orders." (Settlement, ¶ 5.3.)

10.     PAGA Allocation: PAGA Penalties in the amount of $175,000.00 to be paid from the Gross Settlement Amount, with 75% ($131,250.00) allocated to the LWDA PAGA Payment and 25% ($43,750.00) allocated to the Individual PAGA Payments." (Settlement, ¶ 3.2.5.)

11.     Distribution Formula: "An Individual Class Payment calculated by: (a) dividing the Net Settlement Amount by the total number of Class Period Workweeks worked by all Participating Class Members during the Class Period; and (b) multiplying the result by each Participating Class Member's Class Period Workweeks." (Settlement, ¶ 3.2.4.)   As to PAGA: "The Administrator will calculate each Individual PAGA Payment by: (a) dividing the amount of the Aggrieved Employees' 25% share of PAGA Penalties ($25,000) by the total number of PAGA Pay Periods worked by all Aggrieved Employees during the PAGA Period; and (b) multiplying the result by each Aggrieved Employee's PAGA Pay Periods. Aggrieved Employees assume full responsibility and liability for any taxes owed on their Individual PAGA Payment." (Settlement ¶ 3.2.5.1.)

12.     Tax Allocation: "20% of each Participating Class Member's Individual Class Payment will be allocated to settlement of wage claims (the "Wage Portion"). The Wage Portions are subject to tax withholding and will be reported on an IRS W-2 Form. The remaining 80% of each Participating Class Member's Individual Class Payment will be allocated to settlement of claims for interest and penalties (the "Non-Wage Portion"). The Non-Wage Portions are not subject to wage withholdings and will be reported on IRS   1099 Forms. Participating Class Members assume full responsibility and liability for any employee taxes owed on their Individual Class Payment." (Settlement, ¶ 3.2.4.1.)

13.     Class Representative Service Award: "Class Representative Service Payments to Plaintiffs of not more than $10,000 each (in addition to any

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

Individual Class Payment and any Individual PAGA Payment the Class Representatives are entitled to receive as Participating Class Members and Aggrieved Employees, if applicable). Defendants have negotiated for the terms of this Agreement, so Defendants will not oppose Plaintiffs' request for Class Representative Service Payments that do not exceed this amount. As part of the motion for Class Counsel Fees Payment and Class Litigation Expenses Payment, Plaintiffs will seek Court approval for any Class Representative Service Payments no later than 28 days prior to the Final Approval Hearing.  If the Court approves Class Representative Service Payments less than the amounts requested, the Administrator will retain the remainder in the Net Settlement Amount. The Administrator will pay the Class Representative Service Payments using IRS Form 1099. Plaintiffs assume full responsibility and liability for employee taxes owed on the Class Representative Service Payments." (Settlement, ¶ 3.2.1.)

14.    <u>Attorneys' Fees and Costs:</u> "A Class Counsel Fees Payment of not more than one-third of the Gross Settlement Amount, which is currently estimated to be $1,166,666.67 and a Class Counsel Litigation Expense Payment of not more than $50,000. Defendants have negotiated for the terms of this Agreement, so Defendants will not oppose requests for the Class Counsel Fees Payment and Class Counsel Litigation Expense Payment provided that they do not exceed these amounts. Plaintiffs and/or Class Counsel will file a motion for Class Counsel Fees Payment and Class Litigation Expenses Payment no later than 28 days prior to the Final Approval Hearing. If the Court approves a Class Counsel Fees Payment and/or a Class Counsel Litigation Expenses Payment less than the amounts requested, the Administrator will allocate the remainder to the Net Settlement Amount. Released Parties will have no liability to Class Counsel or any other plaintiffs' Counsel arising from any claim to any portion any Class Counsel Fee Payment and/or Class Counsel Litigation Expenses Payment. The Administrator will pay the Class Counsel Fees Payment and Class Counsel

Litigation Expenses Payment using one or more IRS 1099 Forms. Class Counsel assumes full responsibility and liability for taxes owed on the Class Counsel Fees Payment and the Class Counsel Litigation Expenses Payment and holds Defendants harmless, and indemnifies Defendants, from any dispute or controversy regarding any division or sharing of the Class Counsel Fees Payment and/or Class Counsel Litigation Expenses Payment.  (Settlement, ¶ 3.2.2.)

15.    <u>Notice of Proposed Class Action Settlement:</u> The Notice set forth in plain terms, a statement of the case, the terms of the Settlement Agreement, the approximate amount of attorneys' fees, costs, and service awards being sought, and an explanation of how the settlement allocations are calculated.  (*See* Labow Decl., ¶ 3 and **<u>Exhibit A</u>** attached thereto, a true and correct copy of the Class Notice; *see also* Settlement.)  Class Members were notified by first-class mail of the settlement.  (*See* Settlement, ¶ 7.4.2; *see also* Labow Decl., ¶ 6.)  CPT Group, Inc., the Settlement Administrator, undertook its best efforts to ensure that the notice was provided to the current addresses of class members, including conducting a national change of address search and re-mailing the notice to updated addresses.  (*See* Labow Decl., ¶¶ 3-12.)

## III.    <u>THE SETTLEMENT MERITS FINAL APPROVAL</u>

The law favors the settlement of lawsuits, particularly in class actions and other complex cases.  (*See e.g., Neary v. Regents of Univ. of Cal.* (1992) 3 Cal.4th 272, 277-81.)  Factors to be considered in evaluating a class action settlement include "the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through proceedings, the experience and views of counsel, the presence of a government participant, and the reaction of the class members to the proposed settlement." (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 128.)  A presumption that a settlement is fair and reasonable exists where, as here, the following four factors are present: "(l) the settlement is reached through arm's length bargaining; (2) investigation and

discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." (*Wershba v. Apple Computs., Inc.* (2001) 91 Cal.App.4th 224, 245.)

Whether a class action settlement should be approved is a question of broad discretion.  (*See id.* at 234-35.)  In exercising its discretion, the Court should give "[d]ue regard ...to what is otherwise a private consensual agreement between the parties." (*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801.)  "The inquiry 'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  (*See id.*)

### A.    The Settlement Reflects a Reasonable Compromise

A settlement is not judged against what the plaintiff might recover had he or she prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable.  (*Wershba, supra,* 91 Cal.App.4th at pp. 246, 250 ["Compromise is inherent and necessary in the settlement process…even if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation."].)

The settlement obviates the significant risk that this Court may deny certification of all or some of Plaintiffs' claims.  (Woods Decl., ¶ 11.)  While Plaintiffs are confident in the merits of their claims, a legitimate controversy exists as to each cause of action.  (*Id.*)  Plaintiffs also recognize that proving the amount of wages due to each class member would be an expensive, time-consuming, and uncertain proposition.  (*Id.*)  Furthermore, even if Plaintiffs obtained certification of all or some of the claims, continued litigation would be expensive, involving a trial and possible appeals, and would substantially delay and reduce any recovery by the

class.  (*Id.*)

Because of the proposed Settlement, class members will receive timely, guaranteed relief and will avoid the risk of an unfavorable judgment.  When considering the risks of litigation, the uncertainties involved in achieving class certification, the burdens of proof necessary to establish liability, the probability of appeal of a favorable judgment, it is clear that the settlement amount of $3,500,000.00 is within the "ballpark" of reasonableness, and settlement approval is appropriate.  ***Indeed, each Settlement Class Member is eligible to receive an average benefit of approximately $1,049.87, and the highest estimated net payout is expected to be approximately $2,480.90.***  (*See* Labow Decl., ¶ 14.)

**B.    The Settlement was Reached After Arms-Length Negotiations Following Production of Necessary Documents and Information**

The Settlement was reached after arms-length negotiations based on sufficient documentation and information provided by Defendants. (*See* Sections II(B) and (C) above and their citations.)  Thus, Plaintiffs and their counsel were able to act intelligently and effectively in negotiating the proposed Settlement.  (*See id.*)

**C.    Plaintiffs' Counsel Has Substantial Class Action Experience**

Class Counsel also has considerable experience and has demonstrated competence with litigating wage and hour class actions.  (Woods Decl., ¶¶ 28-43.) Class Counsel have substantial experience in all facets of litigation in state and federal court, including discovery, law and motion, trial, appeals, arbitration and mediation.  Class Counsel have litigated numerous class actions on behalf of plaintiffs and have been lead counsel or otherwise exercised significant case handling responsibilities in numerous cases resulting in millions of dollars in class action settlements. (*Id.*)

Based on Class Counsel's experience as employment and class action attorneys, Class Counsel is eminently qualified to evaluate the strength of Plaintiffs' claims, the strength of Defendants' defenses against certification, the strength of

Defendants' defenses on the merits, and the fairness of the Settlement.  Their opinion that final approval of the Settlement would be in the best interests of class members in light of the significant risks of litigation is entitled to great weight.  (*See Kullar, supra,* 168 Cal.App.4th at p. 129 ["The court undoubtedly should give considerable weight to the competency and integrity of counsel and the involvement of a neutral mediator in assuring itself that a settlement agreement represents an arms' length transaction entered without self-dealing or other potential misconduct"].)

### D.    There Are No Objections to the Settlement

To date, no class member has objected to the Settlement, and only *three* class members have requested exclusion from the Settlement.  (Labow Decl., ¶¶ 10-11.)  The overwhelmingly positive response of the class strongly supports final approval of the Settlement.  (*See, e.g., In re Lifelock, Inc. Marketing and Sales Practices Litigation* (D. Ariz. 2010) 2010 WL 3715138, *6 [relatively few objections and requests for exclusion support approval].)

Factors to be considered in evaluating a class action settlement include "the reaction of the class members to the proposed settlement." (*Kullar, supra,* 168 Cal.App.4th at p. 128.)  The reaction here has been overwhelmingly positive.  Courts have approved class action settlements in lesser circumstances. (*See, e.g., Hughes v. Microsoft Corp.* (W.D.Wash. 2001) 2001 U.S. Dist. LEXIS 5976, 2001 WL 34089697, *8  [court found that the "class members overwhelmingly support[ed] the settlement" where there were over 37,000 notices sent out, 2,745 class members participated in the settlement, "only nine objections were submitted", and there were 86 timely opt-outs and over 20 additional defective or untimely opt-outs, "these indicia of the approval of the class of the terms of the settlement support a finding of fairness under Rule 23"], *citing Hanlon v. Chrysler Corp.* (9th Cir.1998) 150 F.3d 1011, 1027 [despite vigorous objections and appeal by objectors, the "fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness," and the

12

court did not abuse its discretion in approving settlement].)

## IV.    THE COURT SHOULD AWARD PLAINTIFFS THE REQUESTED AMOUNTS OF FEES, COSTS AND ENHANCEMENT PAYMENTS.

Under the Settlement, subject to the Court's approval, Defendants have agreed to pay Class Counsel reasonable attorneys' fees in the amount of one third of the Gross Settlement Amount, $980,000.00, costs of up to $50,000.00, and enhancement awards of $10,000.00 to each named Plaintiffs Dalette Ott and Loira Sanchez.  No class member has objected to these amounts.

In common fund cases like this one, the primary method California courts use for calculating attorneys' fees is the percentage of the common fund method, which may be followed by a lodestar cross-check.  In *Laffitte v. Robert Half Int'l Inc.* (2016) 1 Cal.5th 480, the California Supreme Court affirmed an award of 33 1/3% of a $19 million wage and hour class action settlement with a 2.03 to 2.13 multiplier.  (*Id.* at p. 506.)  In doing so, the California Supreme Court explained:

> As to the incentives a lodestar cross-check might create for class counsel, we emphasize the lodestar calculation, when used in this manner, ***does not override the trial court's primary determination of the fee as a percentage of the common fund*** and thus ***does not impose an absolute maximum or minimum on the potential fee award***. If the multiplier calculated by means of a lodestar cross-check is extraordinarily high or low, the trial court should consider whether the percentage used should be adjusted so as to bring the imputed multiplier within a justifiable range, but the court is not necessarily required to make such an adjustment. Courts using the percentage method have generally weighed the time counsel spent on the case as an important factor in choosing a reasonable percentage to apply.

(*Id.* at p. 505, emphasis added; *see also Beaver v. Tarsadia Hotels* (S.D. Cal. Sept. 28, 2017) 2017 WL 4310707, at *9 [applying *Laffitte* standard to fee request for 33 1/3% of common fund].)

### A.    A Fee Award Based on One-Third of the Common Fund is Standard

According to a leading treatise on class actions, "[n]o general rule can be articulated on what is a reasonable percentage of a common fund.  Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." (*See* Conte & Newberg, *Newberg on Class Actions* (3rd Ed.) § 14.03.)  Attorneys' fees at fifty percent of the fund are typically considered the upper limit, with ***thirty to forty percent*** commonly awarded in cases where the settlement is relatively small. (*Id.*; *see also Van Vranken v. Atlantic Richfield Company* (N.D. Cal. 1995) 901 F. Supp. 294 [stating that most cases where 30-50% was awarded involved "smaller" settlement funds of under $10 million].)

The settled for 28% fee award is consistent with the average fee award in class actions. Plaintiffs originally sought one-third (33 1/3%) but revised to 28%.  Indeed, the custom and practice in class actions is to award approximately one-third of a fund as a fee award. (*See Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 66, n.11 ["Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."].)  Thus, Plaintiffs' fee request is in line with the prevailing guidelines established in California case law and academic literature and is consistent with awards in California.  Accordingly, the Court should approve the attorneys' fees requested herein.

**B.** **While the Lodestar Method is Not Necessary in Common Fund Cases, Courts May Perform a Cross-Check to Award Fees.**

Although California supports the common fund doctrine, the lodestar method can be used to cross-check fee awards.  "It may be appropriate in some cases, assuming the class benefit can be monetized with a reasonable degree of certainty, to "cross-check" or adjust the lodestar in comparison to a percentage of the common fund to ensure that the fee awarded is reasonable and within the range of fees freely negotiated in the legal marketplace in comparable litigation."  (*In re Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 557.)

Applying the lodestar method requires a two-step process.  The first step is to

14

multiply the number of hours reasonably expended by a reasonable hourly rate.  The second step is to apply a multiplier to the lodestar to take into account various factors.  "The purpose of such adjustment is to fix a fee at the fair market value for the particular action.  In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services."  (*Id.* at pp. 556-57.)  "Under certain circumstances, a lodestar calculation may be enhanced on the basis of a percentage-of-the-benefit analysis." (*Id.* at p. 557.)

Detailed timesheets are not necessary to a lodestar cross-check.  "The law is clear … that an award of attorney fees may be based on counsel's declarations, without production of detailed time records."  (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375.)  As the California Supreme Court explained in *Laffitte*:

> With regard to expenditure of judicial resources, we note that trial courts conducting lodestar cross-checks have generally not been required to closely scrutinize each claimed attorney-hour, but have instead used information on attorney time spent to "focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys."

> (5 Newberg on Class Actions, *supra*, § 15:86, p. 331; *see, e.g., Goldberger v. Integrated Resources, Inc., supra*, 209 F.3d at p. 50 [2d Cir.; "where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court"]; *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions* (3d Cir.1998) 148 F.3d 283, 342 [agreeing with district court that "detailed time summaries were unnecessary where, as here, it was merely using the lodestar calculation to double check its fee award."]; *Barbosa v. Cargill Meat Solutions Corp.* (E.D.Cal.2013) 297 F.R.D. 431, 451 ["Where the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours."].)

(*Laffitte, supra,* 1 Cal.5th at p. 505.)

Class Counsel's lodestar is at least $272,550.00 based on over 332.75 hours of work performed thus far.  (Woods Decl., ¶¶ 18-24.)  Accordingly, the requested fee of $980,000.00 is reasonable and fair as it is based on an approximate multiplier of

3.2. To be sure, trial courts have substantial discretion in adjusting the lodestar to account for various factors. (*See Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 26, 39-45; *see also Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) In addition, it has been held that "[m]ultipliers can range from 2 to 4 or even higher." (*See Wershba*, *supra,* 91 Cal.App.4th at p. 255; *see also Van Vranken*, *supra,* 901 F. Supp. At p. 298 ["[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."].) Similar multipliers have been found to be reasonable for Class Counsel. (*See, e.g., Moreno v. Pretium Packaging, L.L.C.* (C.D. Cal. Aug. 6, 2021) No. 8:19-cv-02500-SB, 2021 WL 3673845, *3 [finding Wilshire Law Firm, PLC's multiplier of 2.57 reasonable "in light of the contingent nature of recovery, the complexity of the issues, and the result obtained"].)

### 1. Class Counsel's Rates Have Been Approved by Several Courts.

Class Counsel provides a declaration to support their lodestar hourly rates. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." (*United Steelworkers of America v. Phelps Dodge Corp.* (9th Cir. 1990) 896 F.2d 403, 407.) Class Counsel has received final approval of their hourly rates in other wage and hour class action settlements.

### 2. Class Counsel's Requested Fees are Reasonable.

Once this lodestar figure has been determined, the Court may take into account other "enhancement" factors to adjust the lodestar award. The overall reasonableness of Plaintiffs' request is underscored by the fact that a significantly higher multiplier would be justified under applicable law.

Contingency fees should be higher than fees for the same legal services paid concurrently with the provision of the services. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132-33 ("*Ketchum*").) "A lawyer who both bears the risk of not

16

being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases."  (*Id.* at 1133.) Application of that rule is particularly appropriate where the case is brought to redress important rights of vulnerable persons.  (*Id.*)  A risk enhancement is "earned compensation; unlike a windfall, it is neither unexpected nor fortuitous. Rather it is intended to approximate market-level compensation for such services which typically pay a premium for the risk of nonpayment or delay in payment of attorney's fees." (*Id.* at 1138.)

"Multipliers can range from 2 to 4 or even higher."  (*Wershba*, *supra,* 91 Cal.App.4th at p. 255; *see also Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 512 [applying a 2.52 multiplier on a cross-check in an antitrust class action]; *Chavez, supra,* 162 Cal.App.4th at p. 60 [applying a 2.5 multiplier on a lodestar cross-check]; *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1051 n.6 ["most" common fund cases apply a multiplier of 1.0-4.0]; *Been v. O.K. Industries Inc.* (E.D. Okla. 2011) 2011 WL 4478766, *11, *citing* a study "reporting [an] average multiplier of 3.89 in survey of 1,120 class action cases" and finding that a multiplier of 2.43 would be "per se reasonable.")  The intermediate court in *Laffitte*, after finding that "2 to 4" is a reasonable range for multipliers on a cross-check, affirmed a 2.13 multiplier.  (*Laffitte v. Robert Half Int'l* (2014) 231 Cal.App.4th 860, 881-82.) The intermediate court opinion was affirmed in full by the California Supreme Court in its new decision guiding lower courts on assessing fees.

Factors considered in determining whether a lodestar multiplier is appropriate generally include: (1) the risks presented by the contingent nature of the case; (2) the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; (3) the nature of the opposition; (4) the preclusion of other employment by the attorney due to acceptance of the case;

17

and (5) the result obtained and the importance of the lawsuit to the public. (*Serrano, supra,* 20 Cal.3d at pp. 48-49.)  All of these factors favor approval of a multiplier along the lines of those approved in the cases above.

The major consideration in determining the necessity of a multiplier is the contingent nature of the award.  (*Ketchum, supra*, at 1132-33.)  Further, the possibility of no recovery is only one of the uncertainties involved in taking on such a case.  Other uncertainties are the amount that will be recovered, uncertainty as to the cost, both in effort and expenses, and uncertainty about how much time will pass before the recovery is obtained. (*Id.* at 1132-1133, 1138.)  Here, Class Counsel have been the only counsel to represent Class Members in this matter and have borne the entire risk and costs of litigation purely on a contingency basis.  Class Counsel's outlay of time and money in this case has been significant.

The other factors are also present here.  Class Counsel are skilled attorneys who have had success in wage and hour class actions.  This case required experienced and competent lawyers and expertise in the issues presented herein. Defendants' contentions underscore the risk of prevailing at class certification and trial, and any of these obstacles could have prevented recovery completely. Further, proceeding to trial would have added years to the resolution of this case because of the difficult legal and factual issues raised and the likelihood of appeals. Despite these risks, Class Counsel took this case on a contingency basis.  Yet, there are only so many cases that Class Counsel can take at any one time.  Consequently, there were other meritorious cases presented to Class Counsel that would have generated substantial fees, but were declined, during the pendency of this action in order to devote the attention necessary to achieve favorable results.  (Woods Decl., ¶¶ 25-26.)  Considered against the risks of continued litigation, and the importance of the employment rights and a speedy recovery, the relief provided under the Settlement represents a very strong result for the Class.

C.    **Costs Are Reasonable.**

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

As of the date of filing this Motion, Class Counsel has incurred approximately $39,256.46.00 in costs; less than the agreed-up and approved amount of up to $50,000.00. (Woods Decl., ¶ 27.) Accordingly, Class Counsel respectfully requests reimbursement of $39,256.46.00 in costs. The categories of costs are set forth in **Exhibit 3** to the accompanying Declaration of Tyler Woods, and these costs are easily seen to be both reasonable and necessary.

Counsel can recover "out-of-pocket expenses that 'would normally be charged to a fee paying client'" including costs for "service of summons and complaint, service of trial subpoenas, fee for defense expert at deposition, postage, investigator, copying costs, hotel bills, meals, messenger service and employment record reproduction." (*Harris v. Marhoefer* (9th Cir. 1994) 24 F.3d 16, 19.) Such costs are properly recoverable on motions for settlement approval. (*See Nunez v. BAE Sys. San Diego Ship Repair Inc.* (S.D. Cal. 2017) 292 F. Supp. 3d 1018, 1057; *Rutti v. Lojack Corp.* (C.D. Cal. July 31, 2012) No. CV 06–00350 DOC, 2012 WL 3151077, at *12 ["Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."].)

### D.    The Enhancement Payments to the Plaintiffs are Reasonable.

Named plaintiffs in class action lawsuits "are eligible for reasonable incentive payments to compensate them for the expense or risk they have incurred in conferring a benefit on other members of the class." (*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal.App.4th 399, 412.) Courts routinely grant approval of class action settlement agreements containing enhancements for the class representatives, which are necessary to provide incentive to represent the class, and are appropriate given the benefit the class representatives help to bring about for the class. (*See Rodriguez v. W. Publ'g Corp.* (9th Cir. 2009) 563 F.3d 948, 958-59.) The California Supreme Court has also noted that "retaliation against employees for

asserting statutory rights under the Labor Code is widespread," despite anti-retaliation statutes designed to protect employees. (*Gentry v. Super. Ct.* (2007) 42 Cal.4th 443, 460-61.) Plaintiff should therefore be rewarded for assuming the risk of retaliation for the sake of class members. (*See Frank v. Eastman Kodak Co.* (W.D.N.Y. 2005) 228 F.R.D. 174, 187.)

Under the settlement agreement, subject to the Court's approval, Defendants agreed to pay a Class Representative Service Payment in the amount of $10,000.00 to each Plaintiff Dalette Ott and Loira Sanchez. This amount is also in exchange for Plaintiffs' general releases of all claims against Defendants. Plaintiffs have submitted a declaration demonstrating their devotion to this case, including their efforts assisting counsel in the case, communicating with counsel frequently for litigation, preparing for mediation, and reviewing case-related documents. (*See, generally,* Declaration of Plaintiffs submitted in support of Motion for Preliminary Approval.)

When compared with the amounts awarded in typical class action cases, the amount requested here is particularly reasonable. Indeed, a **2006** study examining the average incentive award given to class action plaintiffs from **1993 to 2002** found that the "average award per class representative was $15,992 and the median award per class representative was $4,357." (Theodore Eisenberg & Jeffrey P. Miller, "Incentive Awards to Class Action Plaintiffs: An Empirical Study", 53 UCLA L. Rev. 1303, 1308 (2006).) Courts routinely approve a $10,000 enhancement award for plaintiffs represented by Class Counsel. (*See, e.g., Moreno, supra,* 2021 WL 3673845 at *3 ["The Court concludes a $10,000 incentive award is appropriate."]; *Suarez, supra,* 2024 WL 150721 at p. *4 ["The court approves awards of $10,000 for each class representative."].)

"Since without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit." (*Clark v. Am. Residential Services LLC* (2009) 175 Cal.App.4th 785, 804.) "[T]he

20

rationale for making enhancement or incentive awards to named plaintiffs is that they should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the class." (*Id.* at p. 806.) "An incentive award is appropriate 'if it is necessary to induce an individual to participate in the suit.'" (*Cellphone Term. Fee Cases* (2010) 186 Cal.App.4th 1380, 1394, *quoting Clark*, 175 Cal.App.4th at p. 804.) The "criteria courts may consider in determining whether to make an incentive award include: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." (*Id.* at pp. 1394–95.) Plaintiff's declaration describes how each of the five *Cellphone Termination* factors are present here.

### E.    Administration Expenses Should be Approved.

CPT Group, Inc., the Settlement Administrator, estimates that it will incur a total of $18,000.00 in costs associated with the administration of this Settlement. (*See* Decl., ¶ 16.) These expenses are reasonable, based upon the size of the class, claim and exclusion tracking, and Class Member payment processing.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement as indicated herein.

Dated: September 24, 2025          Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

Tyler Woods
Alan Wilcox
James Yoo
Ruby Carrera
Attorneys for Plaintiffs

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

**Certificate of Compliance Pursuant to Local Rule 11-6.2**

The undersigned, counsel of record for Plaintiffs Dalette Ott and Loira Sanchez, certifies that this brief contains 6,807 words, which complies with the word limit of L.R. 11-6.1.

September 24, 2025         _____

                                          Tyler Woods

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT