# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALETTE OTT and LOIRA SANCHEZ, individually, and on behalf of all others similarly situated,<br><br>                            Plaintiffs,<br><br>      v.<br><br>COOPER INTERCONNECT, INC., a corporation; EATON CORPORATION, a corporation; POWER DISTRIBUTION INC., a corporation; JOSLYN SUNBANK COMPANY, LLC, a limited liability company; SURE POWER, INC., a corporation; EATON AEROSPACE LLC, a limited liability company; COOPER BUSSMAN, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>                            Defendants. | Case No. 2:23-cv-04501-SPG-JC<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [ECF NO. 68]** |

Before the Court is the Motion for Final Approval of Class Action Settlement (ECF No. 68 ("Motion")) filed by Plaintiffs Dalette Ott ("Ott") and Loira Sanchez ("Sanchez," or, together with Ott, "Plaintiffs"). Having considered the parties' submissions, oral

arguments, the relevant law, and the record in this case, the Court GRANTS the Motion. Although the Court grants final approval of the Settlement Agreement, the Court finds the class representative and attorney's fees awards to be excessive and reduces them accordingly.

## I.    BACKGROUND

### A.    Plaintiffs' Allegations

This is a putative wage-and-hour class action lawsuit brought by Plaintiffs against Defendants Cooper Interconnect, Inc.; Eaton Corporation; Power Distribution Inc.; Joslyn Sunbank Company, LLC; Sure Power, Inc.; Eaton Aerospace LLC; and Cooper Bussman, LLC ("Defendants"). (ECF No. 40 ("FAC")). Plaintiffs were employed by Defendants in California as non-exempt employees. (*Id.* ¶¶ 8-9). Plaintiffs allege that, throughout the course of their employment, Defendants failed to pay for all hours worked, failed to provide required meal and rest periods, failed to timely pay all final wages upon termination, failed to furnish accurate wage statements, and failed to indemnify Plaintiffs for required expenses. (*Id.* ¶ 16).

Plaintiffs allege that these labor code violations were part of Defendants' policies and practice, common to all non-exempt employees. (*Id.* ¶ 17). Plaintiffs seek to represent a class of non-exempt employees of Defendants in California during the four-year period prior to the filing of this action. (*Id.* ¶ 26). Plaintiffs also seek to bring a representative action under the California Private Attorneys General Act ("PAGA") to recover civil penalties owed to the State of California and to the members of the class. (*Id.* ¶ 3). As relief, Plaintiffs seek to recover damages, civil penalties, attorney's fees, and costs. (*Id.* at 29-33).

### B.    Procedural History

Plaintiffs filed their class action complaint in Ventura County Superior Court on April 25, 2023, alleging eight claims. (ECF No. 1-1 ("Complaint")). Defendants filed their answer in state court on June 7, 2023, (ECF No. 1-3), and removed the case to this Court the following day, (ECF No. 1). On July 10, 2023, Plaintiffs filed a motion to

remand, (ECF No. 15), which the Court denied on August 25, 2023, (ECF No. 24). Following a period of discovery, on June 14, 2024, the parties sent a notification of intent to engage in private mediation, (ECF No. 33), and informed the Court that they anticipated completing mediation on a classwide basis by October 29, 2024, (ECF No. 34).

On October 29, 2024, the parties stipulated for leave to amend the Complaint to add the PAGA claim, (ECF No. 37), which Plaintiffs did on November 8, 2024, (FAC).  The FAC consists of ten causes of action for (1) failure to pay wages for all hours worked, (2) failure to pay overtime wages, (3) failure to provide required meal periods, (4) failure to authorize required rest periods, (5) failure to timely pay final wages, (6) failure to provide accurate wage statements, (7) failure to indemnify employees for expenditures, (8) failure to keep required payroll records, (9) unfair business practices, and (10) civil penalties under PAGA.  (*Id.* at 1-2).

Plaintiffs filed a motion for preliminary approval of class settlement on December 11, 2024.  (ECF No. 41).  On March 13, 2025, the Court granted, in part, and denied, in part, the motion for preliminary approval.  (ECF No. 51).  While the Court granted conditional certification of the class and approved of the proposed class representatives and class counsel, the Court denied preliminary approval without prejudice, based on several issues with the proposed settlement.  (*Id.* at 26).  On May 15, 2025, Plaintiffs filed a renewed motion for preliminary approval of class settlement.  (ECF No. 62).  On June 23, 2025, the Court granted preliminary approval and directed the parties to proceed with the process for notification of class members.  (ECF No. 67).  In its order, the Court expressed continued concern with the size of the proposed attorney's fee and class representative awards but allowed the parties to provide more detailed briefing on those issues in a later motion.  (*Id.* at 17).

Plaintiffs filed the instant Motion on September 24, 2025, seeking final approval of the class settlement.  (Mot.).  The Motion is accompanied by a declaration from Plaintiffs' Counsel, (ECF No. 68-1 ("Woods Declaration")), as well as various supporting exhibits. As required by Federal Rule of Civil Procedure 23(e)(2), the Court held a hearing on the

Motion on October 22, 2025.  At Defendant's request, the Court set a second hearing for January 7, 2026, to permit Defendant to complete required notification to State and Federal officials under 28 U.S.C. § 1715(b).  *See* (ECF No. 77).

### C.    The Settlement Agreement

The parties have negotiated the Amended Class Action and PAGA Settlement Agreement, (ECF No. 68-2 ("Settlement Agreement")), which contains the following key provisions.

#### 1.    Class Definition

The Settlement seeks to certify a class of "all individuals who were employed by Defendants in the State of California and classified as non-exempt employees during the Class Period." (*Id.* at 2).  The Class Period is defined as the period from April 25, 2019, to October 14, 2024.  (*Id.* at 3).  The term "Defendants" is defined to mean Eaton Corporation and any of its affiliates, including all of the named Defendants in this action. (*Id.*).  Defendants estimate that there are approximately 1,815 class members in the proposed settlement class.[1]  (*Id.* at 9).  The Settlement also defines a class of "Aggrieved Employees" who were employed by Defendants in the State of California as non-exempt employees during the "PAGA Period" from May 12, 2022, to October 14, 2024.  (*Id.* at 2, 4).

#### 2.    Settlement Amount

The gross settlement amount agreed to by the parties is $3,500,000.  (*Id.* at 7).  Of this sum, $175,000 is allocated to settlement of claims for civil penalties under PAGA, 75% of which is to be paid to the California Labor and Workforce Development Agency ("LWDA") and the remainder to the individual Aggrieved Employees.  (*Id.* at 8).  The Settlement Agreement also allocates up to $25,000 for an Administrator Expenses Payment and $20,000 in Class Representative Service Payments to the named Plaintiffs.  (*Id.* at 7-9).  The remaining sum, minus attorney's fees and costs, will be paid to participating class

---

[1] As discussed below, the parties ultimately identified and notified 1,972 potential class members.  *See* (ECF No. 68-7 at 3).

members on a pro rata basis, calculated according to the number of weeks worked by each employee during the Class Period. (*Id.* at 8). This sum is apportioned as 20% for settlement of wage claims, which are subject to tax withholding, and 80% for settlement of claims for interest and penalties, which are not subject to wage withholdings. (*Id.*).

### 3. Attorney's Fees and Costs

The proposed Class Counsel is Tyler Woods and Peter Horton of Wilshire Law Firm. (*Id.* at 2). The Settlement Agreement provides that Class Counsel may take "not more than one-third" of the gross settlement amount (i.e., $1,166,666.67) as attorney's fees. (*Id.* at 7). However, both the Motion and the accompanying Declaration indicate that Plaintiffs now seek an award of only 28% of the gross settlement amount. *See* (Mot. at 21 ("Plaintiffs originally sought one-third (33 1/3%) but revised to 28%."); Woods Decl. ¶ 18 ("The settlement provides for attorneys' fees and costs to Class Counsel in an amount up to 28% of the Gross Settlement Amount.")). As to costs, while the Settlement Agreement provides for recovery of "not more than $50,000" in costs, Plaintiffs' Counsel states that it is seeking only $39,256.46 in reimbursement. (Mot. at 26; Woods Decl. ¶ 27).

### 4. Releases

The Settlement Agreement operates to release from claims certain "Released Parties," defined to mean (i) Defendants; (ii) parents, subsidiaries, or affiliates of Defendants; (iii) past or present officers, directors, or employees of these entities; and (iv) past or present "predecessors, parents, subsidiaries, affiliates, owners, shareholders, members, managers, benefit plans, operating units, divisions, agents, representatives, officers, directors, partners, employees, fiduciaries, insurers, attorneys, successors or assigns" of these entities. (Settlement Agreement at 5).

Under the Settlement Agreement, the Class Representative Plaintiffs release the Released Parties from "(a) all claims related to their employment with Defendant and/or the Released Parties; (b) all claims that were, or reasonably could have been, alleged, based on the facts contained[] in the Operative Complaint and/or PAGA Notice . . . and (c) all PAGA claims that were, or reasonably could have been[,] alleged based on facts contained

in the Operative Complaint and/or PAGA Notice." (*Id.* at 11). The release "does not extend to any claims or actions to enforce this Agreement, or to any claims for vested benefits, unemployment benefits, disability benefits, social security benefits, [or] workers' compensation benefits that arose at any time." (*Id.*).

Next, the Settlement Agreement provides that participating class members release the Released Parties from all claims that were alleged, or reasonably could have been alleged in the Operative Complaint and/or PAGA Notice, including an enumerated list of claims. (*Id.*). The release does not apply to any other claims, including claims for vested benefits, wrongful termination, violation of the FEHA, unemployment insurance, disability, social security, workers' compensation, or claims based on facts occurring outside the Class Period. (*Id.* at 12).

Finally, the Settlement Agreement provides that Aggrieved Employees—those employed during the PAGA period—are deemed to release the Released Parties from all claims for PAGA penalties that were, or reasonably could have been, alleged in the Operative Complaint and/or PAGA Notice. (*Id.*). The release of PAGA claims applies to all Aggrieved Employees, regardless of whether they opt out of the overall class settlement. (*Id.*).

### 5. Settlement Administrator

The Settlement Administrator for the proposed settlement is CPT Group, Inc. ("CPT"). (*Id.* at 2). The Settlement Agreement provides for an Administration Expenses Payment to CPT, not to exceed $25,000 except upon a showing of good cause. (*Id.* at 8). Plaintiffs indicate in the Motion that CPT now estimates it will incur $18,000 in costs associated with administration of the settlement. (Mot. at 28); *see* (ECF No. 68-7 ("CPT Declaration") ¶ 16). Any excess amounts will be returned to the net settlement amount. (Settlement Agreement at 8).

### D. Notice

On August 4, 2025, CPT sent the Notice Packet via U.S. First-Class Mail to 1,972 class members. (CPT Decl. ¶ 6). Of these notices, 7 were returned as undeliverable. (*Id.*

¶ 7).  Following a skip trace search, CPT re-mailed these Notice Packets, none of which were returned.  (*Id.* ¶ 8).  CPT indicates that it has received three requests for exclusion from class members and zero objections to the terms of the Settlement Agreement, leaving the total number of participating class members at 1,969.  (*Id.* ¶¶ 10-12).

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure mandate judicial approval of all class action settlements.  *See* Fed. R. Civ. P. 23(e).  When approving a class settlement prior to class certification, courts must engage in a two-step process.  *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  First, the court must certify the proposed settlement class.  *Id.* In considering such a request, the court must give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Second, once a class is certified, the court may approve the class settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) ("The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights.").  Accordingly, before approving a class settlement, Rule 23(e) directs courts to consider the following factors when assessing the fairness, adequacy and reasonableness of a class settlement:

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
> > (i)    the costs, risks, and delay of trial and appeal;
> >
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)  the terms of any proposed award of attorney's fees, including timing of payment;

(iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (citation omitted).  A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (internal quotation marks omitted).

Moreover, before the 2018 amendment to the Federal Rule of Civil Procedure 23(e), the Ninth Circuit developed its own list of eight fairness factors—commonly referred to as the "*Churchill* factors." *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).  However, the amended Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  "The goal of [amended Rule 23(e)] is . . . to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*.  Some of the *Churchill* factors tend to overlap with the factors from Rule 23(e).  *See, e.g.*, *Lalli v. First Team Real Est.-Orange Cnty.*, No. 8:20-cv-00027-JWH-ADS, 2022 WL 8207530, at *8 (C.D. Cal. Sept. 6, 2022) (declining to duplicate analysis when the second *Churchill* factor "closely mirrors" the first factor listed in Rule 23(e)(2)(C)); *Hang v. Old Dominion Freight Line, Inc.*, No. 5:21-cv-

-8-

00287-JWH-DTBx, 2024 WL 2191930, at *7 (C.D. Cal. May 14, 2024).[2]  Therefore, for the sake of avoiding repetitive analysis and remaining focused on the core concerns outlined by both Rule 23(e) and the Ninth Circuit, the Court will incorporate in its Rule 23(e) analysis the relevant *Churchill* factors that shed additional light on the fairness of the proposed settlement.

## III.    FINAL SETTLEMENT APPROVAL

The parties seek certification of the Settlement Class and approval of the Settlement Agreement pursuant to Rule 23.  For the reasons stated below, the Court approves the Settlement Agreement and finalizes the Settlement Class.

### A.    Rule 23(a) and (b) Requirements

In its preliminary approval order, the Court conducted an extensive analysis and certified a provisional settlement class under Rules 23(a) and (b).  *See* (ECF No. 51 at 7-12); *see also* (ECF No. 67 at 6).  For purposes of the instant Motion, the Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)."  *Adoma v. Univ. of Phoenix, Inc*., 913 F. Supp. 2d 964, 974 (E.D. Cal. 2012); *see also Smith v. Keurig Green Mountain, Inc*., No. 18-cv-06690-HSG, 2023 WL 2250264, at *4 (N.D. Cal. Feb. 27, 2023) ("Because no facts that would affect these requirements have changed since the Court preliminarily approved the class . . . this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval."); *Lalli*, 2022 WL 8207530, at *4 (certifying a settlement class for final approval absent material changes during the interim between the court's preliminary and final certification).

Here, the nature of the Settlement Class has not materially changed since it was conditionally certified, and all the criteria for class certification remain satisfied.  The only change is that the number of class members has slightly increased from the estimate offered

---

[2] After the Rule 23(e) amendment, the Ninth Circuit instructed "district courts to consider these [*Churchill*] factors in their holistic assessment of settlement fairness."  *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2021).

1    by the parties in the preliminary approval motion briefing.  All the criteria for class

2    certification remain satisfied, notwithstanding this slight change.  Therefore, the Court

3    confirms its March 13 and June 23, 2025, orders certifying the Settlement Class.

4         **B.    Rule 23(e)**

5         Upon certification of the Class, the Court may only approve the Amended Settlement

6    Agreement upon finding the agreement is fair, reasonable, and adequate pursuant to Rule

7    23(e)(2).  The Court will examine the 23(e) factors in turn.

8              1.    <u>Adequacy of Representation by Class Representatives and Class</u>

9                    <u>Counsel</u>

10        The first factor examines whether the class representatives and class counsel

11   adequately represented the class.  Fed. R. Civ. P. 23(e)(2)(A).  Class representatives are

12   adequate if the named plaintiff and counsel do not have any conflicts of interest with other

13   class members and will prosecute the action vigorously on behalf of the class.  *Hanlon v.*

14   *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Adequate representation of counsel

15   is generally presumed in the absence of contrary evidence.  *See Californians for Disability*

16   *Rts., Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

17        In its previous orders, the Court found that Plaintiffs and Plaintiffs' Counsel had

18   provided adequate representation.  (ECF No. 51 at 14; ECF No. 67 at 8).  The Court's

19   conclusion is unchanged for purposes of final approval.   The Class Representative

20   Plaintiffs have diligently represented class members' interests by providing supporting

21   documents to counsel, consulting on the claims, and assisting with mediation.  (Woods

22   Decl. ¶ 14).   Additionally, the Class Representative Plaintiffs seek the same relief as

23   members of the proposed class and have no apparent conflicts of interest with the other

24   class members.  As to Class Counsel, the Court is satisfied that Plaintiffs' Counsel has

25   more than sufficient experience litigating and evaluating similar class action claims.  *See*

26   (*id.* ¶¶ 28-43).  Accordingly, the Settlement Class is adequately represented, and this factor

27   weighs in favor of approval of the proposed Settlement Agreement.

28

2. <u>Arm's Length Negotiations</u>

The second factor requires the parties to negotiate the proposed settlement "at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  With this factor, the Court takes into account "the conduct of the litigation and of the negotiations leading up to the proposed settlement."  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.

In its prior order, the Court expressed concern that the Settlement Agreement allocated a higher-than-typical amount to attorney's fees and that it contained a clear sailing provision under which Defendants agreed not to contest the request for attorney's fees.  *See* (ECF No. 67 at 10); *see also Bluetooth Headset*, 654 F.3d at 947 (identifying "subtle signs" of collusive conduct that courts should consider).  In the instant Motion, Plaintiffs seek an attorney's fees award of 28% of the gross settlement, rather than the 33.3% award previously sought.  As discussed below, Section IV, the Court finds that Plaintiffs have not shown a basis for an increased award of attorney's fees, even accounting for the self-imposed cut.  With this modification, the Court finds that this factor weighs in favor of approval.  The adjusted award of 25% of the gross settlement amount is in line with the "benchmark" rate that the Ninth Circuit has found presumptively reasonable.  *Hanlon*, 150 F.3d at 1029.

The Settlement Agreement otherwise appears to be the product of arm's length negotiations, which took place during private mediation with a third-party mediator.  (Woods Decl. ¶ 7); *see* Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *see, e.g.*, *Pederson v. Airport Terminal Servs.*, 2018 WL 2138457, at 7 (C.D. Cal. Apr. 5, 2018) (concluding that "assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").  Accordingly, this factor weighs in favor of final approval.

### 3.    Adequacy of the Relief

The third factor considers whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The Court addresses each factor in turn and finds that all factors weigh in favor of the adequacy of relief provided to the class by the Settlement Agreement.

#### a)    *Costs, Risks, and Delay of Trial and Appeal*

"Often, courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes. When considering "the costs, risks, and delay of trial and appeal," courts in the Ninth Circuit have incorporated the following *Churchill* factors in the analysis: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026. While "[t]he amount offered in settlement is generally considered to be the most important consideration of any class settlement," *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1075 (C.D. Cal. 2023) (citation omitted), "a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted). "Even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 611 (E.D. Cal. Oct. 8, 2015).

In its order on Plaintiffs' renewed motion for preliminary approval, the Court found that this factor weighed in favor of preliminary approval. The parties estimated that the maximum potential recovery for Plaintiffs' claims was $36,771,742.93, meaning that the

1    $3,500,000 settlement amounted to 9.5% of the maximum potential recovery. (ECF No.
2    67 at 13). The Court found that this ratio was within the range of outcomes that other
3    courts have approved. The Court also noted that there were several obstacles to Plaintiffs'
4    recovery of the maximum potential amount, including "the difficulty of class certification,
5    the difficulty of proving Defendants' knowledge of off-the-clock work, Defendants'
6    written policies on meal and rest periods and reimbursement, waivers signed by employees,
7    and the discretionary nature of civil penalties." (*Id.*).

8         The Court's conclusion is unchanged for purposes of final approval. "It is well-
9    settled law that a cash settlement amounting to only a fraction of the potential recovery
10   does not per se render the settlement inadequate or unfair." *Officers for Just. v. Civ. Serv.*
11   *Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). While the recovery rate is on the lower end,
12   Courts in this Circuit have routinely granted final approval to class settlements with similar
13   rates of recovery. *See, e.g.*, *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG,
14   2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval and finding
15   that recovery of 10% of maximum potential recovery was "within the range of
16   reasonableness" for wage-and-hour class action); *Hubert v. Equinox Holdings, Inc.*, No.
17   CV 21-00086 PSG (JEMx), 2024 WL 4327402, at *5 (C.D. Cal. July 22, 2024) (finding
18   that a recovery rate of 13% of estimated damages was "well within the range for final
19   approval"). The obstacles to a larger recovery that the Court previously identified remain
20   equally present at the time of final approval and counsel in favor of approval. In addition,
21   the fact that no class members have objected to the proposed Settlement also suggests that
22   the recovery is adequate. Thus, the Court concludes that this factor weighs in favor of
23   preliminary approval.

24                         *b)*    *Effectiveness of Proposed Method of Relief Distribution*

25        Rule 23(e) directs the court to consider the "effectiveness of any proposed method
26   of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). "[T]he goal of any
27   distribution method is to get as much of the available damages remedy to class members
28   as possible and in as simple and expedient a manner as possible." *Musgrove v. Jackson*

*Nurse Pros., LLC*, No. CV 17-6565 FMO (SSx), 2022 WL 18231364, at *6 (C.D. Cal. June 24, 2022) (quoting 4 Newberg on Class Actions, § 13:53 (5th ed.)).  Further, "[o]ften it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims."  Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes.

The Settlement Agreement provides that individual class payments will be calculated by "(a) dividing the Net Settlement Amount by the total number of Class Period Workweeks worked by all Participating Class Members during the Class Period; and (b) multiplying the result by each Participating Class Members' Class Period Workweeks." (Settlement Agreement at 8).  Any additional funds not claimed by non-participating class members will be distributed to participating class members on a pro rata basis.  (*Id.*).  Funds are to be distributed by the Administrator within fourteen days after receipt by mailing checks via First Class U.S. Mail.  (*Id.* at 9-10).  The Administrator is to investigate and search for current Class Member addresses "using all reasonably available sources, methods and means."  (*Id.* at 3, 10).  Any checks that go unclaimed after the void date will be transmitted to the California Controller's Unclaimed Property Fund.  (*Id.* at 10).

In its initial order, the Court found that this method of distribution was "generally adequate," but it expressed concerns that the method of calculating class shares failed to account for differences in hourly wages among class members.  (ECF No. 51 at 21).  The parties then amended the Settlement Agreement to make clear that class members "all typically work[ed] similar positions, [were] scheduled to work the same number of hours each Workweek, 40 hours per Workweek (essentially no part-time employees), and at similar rates of pay to one another, averaging $25.57 per hour."  (Settlement Agreement at 9).  Following this update, the Court found that this factor weighed in favor of preliminary approval.  (ECF No. 67 at 14-15).  The Court's conclusion is unchanged for purposes of this Motion.  The Court finds that the proposed method of distribution is fair and adequate and weighs in favor of preliminary approval.

### c)    Proposed Award of Attorney's Fees

The Court must next consider the "terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). In the context of a class settlement, "courts have an independent obligation to ensure that" any award of fees and costs "is reasonable, even if the parties have already agreed to an amount." *Bluetooth Headset*, 654 F.3d at 941. The Ninth Circuit has stressed that, before approving class action settlements, district courts must "scrutiniz[e] the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause. *See Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).

As discussed in greater detail below, Section IV, the Court will adjust the proposed attorney's fees award to match the benchmark rate set by the Ninth Circuit. With this change, the Court finds that there is no other potential collusion or unfairness to the class. The Settlement Agreement establishes that any portion of the attorney's fees award rejected by the Court will be added to the net settlement amount distributed to class members. (Settlement Agreement at 7). Following final approval, Defendants will fund the gross settlement amount within 30 days and CPT will mail checks to class members within 14 days thereafter. (*Id.* at 8). The Court therefore finds that, with the modification to the attorney's fees award, this factor favors final approval.

### d)    Agreements Required to Be Identified Under Rule 23(e)(3)

Rule 23(e)(3) requires the parties to "file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Because the parties here filed no such statement, the Court considers this factor to be neutral.

### 4.    Equitable Treatment of Class Members

Lastly, Rule 23(e) requires examination of whether a proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes

appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes.

The Court previously found this factor to generally weigh in favor of preliminary approval, save for the $10,000 class representative award. (ECF No. 67 at 16-17). As to the class representative award, the Court noted that it has previously approved lower awards under similar circumstances. However, the Court permitted Plaintiffs to submit additional evidence in support of the class representative award in connection with this Motion.

Plaintiffs have not demonstrated any reason for the Court to diverge from its prior practice. Plaintiffs' Counsel attests that the class representative plaintiffs "devoted a substantial amount of time and work assisting counsel in the case, communicated with counsel very frequently for litigation and to prepare for mediation, and was frequently in contact with Class Counsel during the mediation." (Woods Decl. ¶ 13). In total, Plaintiffs' Counsel attests that Ott spent approximately 20-25 hours and Sanchez spent approximately 40-45 hours litigating this case. (*Id.* ¶ 15). However, in *Estrada v. Denny's Inc.*, this Court previously found a $5,000 class representative award to be "reasonable and proportional to the effort expended by the plaintiff in th[e] case," which included devoting no less than 45 hours to litigation, providing significant and detailed information to class counsel, being directly involved in settlement negotiations, agreeing to a broader release of her claims than other class members, and taking on some risk to her reputation. *Estrada v. Denny's Inc.*, Case No. 2:22-CV-00572-SPG (AGRx), slip op. at 27 (C.D. Cal. July 29, 2024) (Garnett, J.). Plaintiffs offer no reason to distinguish this case from *Estrada*. Accordingly, the Court will award only $5,000 to each of the class representative Plaintiffs.

The Court otherwise finds that the Settlement Agreement treats class members equitably. With the Court's change to the class representative award, the Court finds that this factor favors final approval.

### 5.    Weighing the Factors

Based on the above discussion, the Court finds that, with the modifications to the class representative and attorney's fees awards, all of the factors favor granting final approval.  Accordingly, the Court GRANTS final approval of the Settlement Agreement.

**C.    Sufficiency of Notice**

For classes certified under Rule 23(b)(3), such as this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2)(B) specifies that "United States mail" is one of the methods that may be used to provide notice.  Fed. R. Civ. P. 23(c)(2)(B).  The notice further must include certain substantive elements, stating "clearly and concisely" and "in plain, easily understood language":

(i)    the nature of the action;

(ii)    the definition of the class certified;

(iii)    the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)    that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  Notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d at 575 (internal quotations and citation omitted).

The Court previously found the proposed form of notice to meet each of these factors.  CPT now attests that, following preliminary approval, it engaged in the notice process set forth in the Settlement Agreement.  CPT states that of the 1,972 Notice Packets

that it sent to class members, only 7 were returned as undeliverable. (CPT Decl. ¶ 7). CPT then conducted a skip trace to locate these 7 class members and sent follow-up notice, none of which were returned. (*Id.* ¶ 8). Throughout this time, CPT has maintained a phone number, email address, and website for class members to contact as needed. (*Id.* ¶ 2). CPT has received only three requests for exclusion from the class and no objections to the Settlement. (*Id.* ¶¶ 10, 11). Based on this information, the Court reaffirms its conclusion that this form of notice was sufficient to alert class members of the pending settlement.

In addition, 28 U.S.C. § 1715(b) requires "each defendant that is participating in the proposed settlement" to "serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement." 28 U.S.C. § 1715(b). Courts may not issue final approval of a proposed settlement until "90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice." 28 U.S.C. § 1715(d). Defendant served notice on the State and Federal officials on September 22, 2025. (ECF No. 74). On December 23, 2025, Defendant filed a supplemental declaration indicating that 90 days had elapsed without a response from the State or Federal officials. (ECF No. 77). After a continuance, the Court held the final approval hearing on January 7, 2026. Accordingly, it appears that Defendant has substantially complied with the requirements of § 1715.

### D.    PAGA Settlement

Finally, the Court must consider the proposed PAGA settlement. There are "fundamental differences between PAGA actions and class actions," including that "class certification is not required to pursue a PAGA representative action." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (internal quotation marks, citation, and alterations omitted). The plaintiffs in a PAGA action act "as the proxy or agent of the state's labor law enforcement agencies," and any judgment "binds all those who would be bound by an action brought by the government, *including* nonparty employees." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016)

(citation omitted).  "[B]ecause a settlement of PAGA claims compromises a claim that could otherwise be brought by the state, the PAGA provides that 'court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA].'"  *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017) (quoting Cal. Lab. Code § 2699(s)(2)).  While the statute does not specify the applicable standard for reviewing PAGA settlements, "a number of district courts have applied a Rule 23-like standard, asking whether the settlement of the PAGA claims is fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes."  *Haralson*, 383 F. Supp. 3d at 972 (internal quotation marks and citation omitted).

As the Court previously found in granting preliminary approval, the PAGA settlement is fair, adequate, and reasonable.  The Settlement Agreement allocates $175,000 to the PAGA claim, with 75% of that total being paid to the California LWDA and 25% to individual Aggrieved Employees on a pro rata basis.  Plaintiffs estimated a total potential recovery of $6,290,500, meaning that the PAGA recovery amounts to 5% of the total settlement amount and 2.8% of the estimated maximum potential recovery.  As the Court previously found, both of these recovery ratios are within the range of rates that courts have previously approved.  *See* (ECF No. 67 at 20 (collecting cases)).  Furthermore, the concurrent Rule 23 class settlement provides "fair compensation to the class members as employees" and therefore has a "deterrent effect upon the defendant employer and other employers, an objective of PAGA."  *O'Connor*, 201 F. Supp. 3d at 1134 (applying a "sliding scale" approach to evaluate PAGA settlements made in conjunction with class settlements and stating that "if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled").  Finally, while Plaintiffs notified the LWDA of the proposed PAGA settlement, (Woods Decl. ¶ 12), the LWDA has not commented on or opposed the proposed settlement.  *See Martinez v. Semi-Tropic Coop. Gin & Almond Huller, Inc.*, No. 1:19-cv-1581 JLT CDB, 2023 WL 3569906, at *22 (E.D. Cal. May 19, 2023) ("The fact that the LWDA has not commented upon—or objected to—the settlement

supports final approval."). Accordingly, the Court finds that approval of the PAGA settlement is appropriate.

## IV. ATTORNEY'S FEES AND COSTS

Awards of attorney's fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the court may award reasonable attorney's fees and nontaxable costs. Attorney's fees and costs "may be awarded in a certified class action where so authorized by law or the parties' agreement." *Bluetooth Headset*, 654 F.3d at 941. "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Plaintiffs here propose use of the percentage-of-the-fund method, with the lodestar as a form of cross-check. *See* (Mot. at 20-25). In the absence of any objection from other class members, the Court will evaluate the reasonableness of the attorney's fees under the percentage-of-the-fund method.

Under the percentage-of-the-fund method, the Court may award a flat percentage of the gross settlement fund in attorney's fees in order to provide "reasonable compensation" to the attorneys. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The Ninth Circuit has "established 25% of the common fund as a benchmark award for attorney fees." *Hanlon*, 150 F.3d 1011, 1029 (9th Cir. 1998). This benchmark "can then be adjusted upward or downward to account for any unusual circumstances," but "[i]f such an adjustment is warranted . . . it must be made clear by the district court how it arrives at the figure ultimately awarded." *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272.

The Court finds that the 25% benchmark rate is the appropriate award under the circumstances of this case. Plaintiffs argue that a one-third rate is "standard," (Mot. at 20-21), but they fail to engage with the binding Circuit precedent discussed above. While Plaintiffs have reduced their requested award from 33.3% of the gross settlement fund to 28%, they still fail to offer any reason why the Court should apply an upward departure from the Ninth Circuit's benchmark rate.

From the Court's review of the case, there are no "unusual circumstances" that would justify a heightened award. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (listing as relevant factors "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases"). While the $3,500,000 settlement is significant, the recovery rate of 9.5% of the maximum potential recovery is "on the lower end of the recovery achieved in other wage and hour class action settlements." *Correa v. Zillow, Inc.*, No. 8:19-cv-00921-JLS-DFM, 2021 WL 4925394, at *5 (C.D. Cal. June 14, 2021) (discussing "settlement that represents approximately 13.75% of [the defendant's] total exposure"). Next, while Plaintiffs faced some risks in continuing with the litigation—including the possibility that class certification would be denied or that Defendants' affirmative defenses would prove successful—Plaintiffs have not identified any particular risks that differ from similar wage-and-hour class action cases. *See id.* (declining upward adjustment where "this action posed risks similar to those in most wage and hour class actions"). Third, while the Court has no reason to doubt Plaintiffs' Counsel's skill, Plaintiffs' Counsel has not had occasion to exercise exceptional skill in this case, which settled prior to any significant motion practice and does not appear to involve any particularly complex legal issues. *See Bravo v. Gale Triangle, Inc.*, CV 16-03347 BRO (GJSx), 2017 WL 708766, at *15 (C.D. Cal. Feb. 16, 2017) (awarding benchmark fees where "settlement was reached . . . after two mediations and before the case had reached class certification or otherwise participated in motion practice"). Fourth, while Plaintiff's Counsel did take this case on a contingent basis, there was no immense financial burden since the case settled after a little over a year and without any significant motion practice. By itself, the fact that Plaintiffs' Counsel relied on a contingency fee supports only "an award of the 25 percent benchmark, it does not support an increase above that benchmark." *Hermosillo v. Davey Tree Surgery Co.*, No. 18-CV-00393-LHK, 2021 WL 2826697, at *4 (N.D. Cal. July 7, 2021). Finally, courts in this Circuit have routinely awarded the benchmark rate for similar California wage-and-hour

1    class action suits. *See, e.g.*, *Bravo*, 2017 WL 708766, at *16; *Correa*, 2021 WL 4925394,

2    at *7; *Vigil v. Hyatt Corp.*, No. 22-cv-00693-HSG, 2024 WL 2137640, at *8 (N.D. Cal.

3    May 13, 2024); *Camilo v. Ozuna*, No. 18-cv-02842-VKD, 2020 WL 1557428, at *9-10

4    (N.D. Cal. Apr. 1, 2020). The Court therefore sees no reason to depart from the benchmark

5    under the facts of this case.[3]

6        A comparison to the lodestar method does not change the Court's conclusion. As

7    the Ninth Circuit has explained, courts may apply the lodestar method as a "cross-check"

8    on the reasonableness of the percentage-of-the-fund method. *Vizcaino*, 290 F.3d at 1050.

9    The lodestar is "calculated by multiplying the number of hours the prevailing party

10   reasonably expended on the litigation (as supported by adequate documentation) by a

11   reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth

12   Headset*, 654 F.3d at 941. Courts may then adjust the lodestar figure up or down by an

13   appropriate multiplier to reflect "a host of 'reasonableness' factors, including the quality

14   of representation, the benefit obtained for the class, the complexity and novelty of the

15   issues presented, and the risk of nonpayment." *Id.* at 941-42 (internal quotation marks

16   omitted).

17       Here, Plaintiffs' Counsel attests that it spent a total of 332.75 hours litigating this

18   case. (Woods Decl. ¶ 19). Multiplying this number by hourly rates ranging from $575–

19   $1,500, Plaintiffs' Counsel estimates that the appropriate lodestar recovery is $272,550.

20   (*Id.* ¶ 20; Mot. at 22-23). Plaintiffs' Counsel suggests without elaboration that the lodestar

21   should be multiplied by a factor of 3.2. (Mot. at 22-23).

22

23   _____

24   [3] During the January 7, 2026, hearing on this Motion, Plaintiffs' Counsel argued that the

25   25% benchmark was primarily appropriate in securities class actions. However, the Ninth
     Circuit has applied the benchmark in a variety of non-securities class actions. *See, e.g.*,

26   *Hanlon*, 150 F.3d at 1029 (applying class action benchmark rate in products liability
     action); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.

27   1990) (applying benchmark rate to Farm Labor Contractor Registration Act claims). The

28   Court otherwise finds Plaintiffs' Counsel's oral arguments unpersuasive.

Taking these figures as true, the Court finds that the lodestar approach favors an award of the 25% benchmark. As an initial matter, the proposed 3.2 multiplier would result in an award of $872,160—almost exactly 25% of the total settlement fund, not the 28% requested. Even if Plaintiffs intended to include a higher multiplier, the 3.2 multiplier is already on the higher end of multipliers approved in this Circuit, and Plaintiffs have made no effort to justify such a high multiplier with reference to any of the "reasonableness" factors referenced above. *See Vizcaino*, 290 F.3d at 1051 n.6 (citing study finding that 83% of lodestar multipliers in common fund settlements ranged "from 1.0-4.0 and a bare majority . . . in the 1.5-3.0 range"). Given that this case settled relatively early in the litigation, the Court finds that the lodestar cross-check supports an award of the benchmark rate and not a heightened fee award. *See id.* at 1050 ("Where [the lawyers'] investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable."). Based on the total settlement award of $3,500,000, this amounts to an award of $875,000 in attorney's fees.

As to costs, Plaintiffs' Counsel seeks to recover $39,256.46 that it expended on this litigation. (Woods Decl. ¶ 27). Plaintiffs' Counsel includes an exhibit showing the costs incurred, which consist of mediation fees, consulting fees, research expenses, filing fees, and service costs. (ECF No. 68-4). As discussed, the Settlement Agreement provides for recovery of up to $50,000 in costs. (Settlement Agreement at 7). Based on the evidence put forth by Plaintiffs' Counsel and the lack of opposition from any class members, the Court agrees that Plaintiffs' Counsel is entitled to recover these costs.

## V.    CONCLUSION

For the foregoing reasons, the Court:

1.  GRANTS Plaintiffs' Motion for Final Approval of Class Action Settlement and approves settlement of the action between Plaintiffs and Defendants, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate. The parties are directed to perform their settlement in accordance with the terms set forth in the Settlement Agreement, except as modified by this Order;

2. CERTIFIES the Settlement Class, as described in Section I.C.1, for settlement purposes only;

3. APPOINTS Plaintiffs Ott and Sanchez as Class Representatives and GRANTS a reduced class representative award of $5,000 to each of the Class Representatives;

4. APPOINTS Attorneys Tyler Woods and Alan Wilcox of Wilshire Law Firm, PLC as Class Counsel and GRANTS an award of $875,000 in attorney's fees and $39,256.46 in costs; and

5. APPOINTS CPT Group, Inc., as the Settlement Administrator and GRANTS an award of $18,000.00 in settlement administration expenses.

No later than fourteen (14) calendar days from the date of this Order, Plaintiffs' Counsel shall submit to the Court a proposed judgment consistent with this Order.

**IT IS SO ORDERED.**

DATED: January 9, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE